This is an insurance case.
On June 29, 1977 Gordon T. Inglish, then a sergeant in the United States Air Force, applied for a policy of life insurance in the amount of $10,000 with United Services General Life Company (hereinafter referred to as United Services). On his application for this policy, Sergeant Inglish was requested to truthfully and completely disclose to the best of his knowledge and belief certain details of his medical history and to subjectively evaluate his extant medical condition. He provided the following answers to the following questions:
26. Date of latest physical examination.
 Day (If examined) Month within last 30 days Year
A 6 10 77 *Page 962 
 27. Details of any hospitalization, medication or treatment recommended as a result of above examination(s). If none, SO STATE.
No
 28. Name all other physicians and practitioners consulted, or who have examined or treated A . . . above within the past five years. State for what conditions or purposes. Give dates and full details. If none, SO STATE.
Annual A.F. Physical
 29. Has A . . . ever had or been treated for cancer, diabetes, heart disease, high blood pressure or tuberculosis? No.
 If "yes", give dates and full details in No. 36, including names and addresses of doctors.
 30. Is [the] person in A . . . now to the best of your knowledge and belief in good health and free from defect or deformity? Yes.
On the basis of his answers to these and other questions contained in his application for insurance, United Services, on July 1, 1977, issued a policy of insurance in the amount of $10,000 on the life of Gordon T. Inglish. Appellant was designated as beneficiary of the proceeds of the policy. Prior to his retirement from the military on September 1, 1977, Sergeant Inglish underwent an Air Force retirement physical which began on May 3, 1977 and ended on June 23, 1977. After his retirement he performed repair and maintenance work on various aircraft for the Civil Air Patrol at Maxwell Air Force Base in Montgomery, Alabama. On May 4, 1978 Sergeant Inglish died of a heart attack. United Services received timely notice of the death of Gordon Inglish but refused to pay appellant any portion of the proceeds of his life insurance policy. Appellant thereupon filed suit against appellee to recover the proceeds. Appellee answered denying liability on the policy by virtue of § 27-14-7 of the 1975 Alabama Code which provides, inter alia, that:
 Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
(1) Fraudulent;
 (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
 (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
From a jury verdict in favor of appellee appellant has prosecuted this appeal contending that the trial court erred to reversal in (1) permitting appellee's vice president of underwriting, Don F. Manigold, to testify over appellant's timely objection that United Services had never been involved in a lawsuit over a claim on a policy; (2) denying appellant's motions for a directed verdict or for a judgment notwithstanding the verdict or for a new trial on the ground that appellee failed to prove that it would have declined Sergeant Inglish's application had it been aware of certain facts respecting his medical condition which it only discovered subsequent to his death; (3) permitting Mr. Manigold to testify that Gordon Inglish's medical records were inconsistent with his application for insurance; (4) allowing Mr. Manigold to testify over objection that he would not have issued the policy under normal operating procedures if he had been familiar with the contents of Sergeant Inglish's medical records; (5) failing to recognize that appellee had neglected to prove that Sergeant Inglish had made fraudulent misrepresentations in completing his application for life insurance with appellee; and (6) sustaining appellee's objection to appellant's contention on final argument that if appellee failed to prove that Sergeant Inglish had anything but heart disease at the time he applied for *Page 963 
insurance with United Services the jury should return a verdict for appellant. For the reasons detailed below, we affirm.
In his opening statement to the jury, counsel for the appellant made the following observations:
 The life insurance company [sic] enjoy a good reputation, and deservedly so. They do many charitable and worthwhile works in the community, and they are pillars in the community, and they do some great things. And I am favorably disposed to them. Unlike casualty insurance companies, they generally pay off in the amount that is set, whatever is in the policy, there is no argument. However, if someone dies within two years after making an application for insurance, they have a tendency sometimes, as in this case, not to want to pay off. And they scramble around and try to figure out why or how they can get out from under the risk. And they normally claim misrepresentation.
Appellee raised no objection to this portion of appellant's argument but was permitted to introduce as part of its case in chief, over appellant's timely objection, evidence that United Services had never been involved in a lawsuit over a claim on one of its insurance policies. Counsel for United Services argues that such evidence was properly admitted to rebut appellant's impermissible introduction in her opening statement of evidence impugning appellee's character under the doctrine of curative admissibility and "was the only method open to United Services to rebut opposing counsel's damaging remarks during open [sic] statements." We cannot agree. As a general rule, in a civil action, a party's good or bad character with regard to a certain activity may not be introduced into evidence "for the purpose of showing that, on the occasion in question, he acted in keeping with that character. [Footnote omitted.]" C. Gamble, McElroy's Alabama Evidence § 34.01 (3d ed. 1977); see Smith v. CivilService Board of City of Florence, 52 Ala. App. 44, 289 So.2d 614
(1974). Thus, evidence of a life insurance company's tendency to resist payment of death benefits to beneficiaries of its policies on spurious grounds is inadmissible to prove that it is refusing to pay such benefits on a policy which is the subject of the case at bar on similar grounds. If such character evidence is erroneously received into evidence, however, the opponent of same has the right to rebut it with evidence of the company's propensity to pay these benefits. See C. Gamble, supra at § 14.01. Hence, appellee could properly introduce into evidence testimony that it had never been involved in a lawsuit over a claim involving one of its insurance policies if appellant had previously injected into the trial evidence of United Services' propensity to resist payment of death benefits to beneficiaries of its life insurance policies on specious grounds. But appellant did not introduce evidence of such propensity into the trial of this action. Appellant inferred that appellee possessed this propensity only in her opening statement. Under Alabama law, "[t]he opening statement of counsel . . . is not evidence and does not necessarily contain all or even a major part of [a party's] case." Wilkey v. State ex rel. Smith, 238 Ala. 595,192 So. 588 (1939). It follows that appellee should not have been permitted to introduce at trial evidence that it had never been sued on a claim arising under one of its insurance policies. However, we do not believe that such an error warrants a reversal of the verdict rendered in this case. Rule 45 of the Alabama Rules of Appellate Procedure provides in part that:
 No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of . . . improper admission or rejection of evidence, . . . unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties. [Emphasis supplied.]
Upon an examination of the entire record in this case, we cannot say that the error of the trial court noted above probably injuriously affected substantial rights of the plaintiff. It will become apparent in the *Page 964 
course of this opinion that there was testimony from which the jury might reasonably have concluded that Gordon T. Inglish knowingly misrepresented his medical history to appellee at the time he applied for life insurance with United Services. Evidence that appellee had never been previously involved in a lawsuit over a claim on one of its policies probably had a minimal impact upon the jury's deliberations.
Appellant's third assignment of error, as noted previously, is that the trial court erroneously permitted Mr. Manigold to testify over appellant's timely objection that Gordon Inglish's medical records were inconsistent with his application for insurance. Phrased differently, appellant argues that Mr. Manigold was permitted to testify that Sergeant Inglish had heart disease at the time he applied for life insurance with appellee and that such testimony should not have been admitted since a layman cannot testify that another person was or is suffering from a particular disease. See Dominick v. Randolph, 124 Ala. 557,27 So. 481 (1899). We are of the opinion, however, that Mr. Manigold's testimony in this respect was not tantamount to expert testimony that Inglish had heart disease at the time he applied for life insurance with appellee; rather it constituted merely an observation by the witness that the medical records were inconsistent with the answers given to certain questions posed by the application for life insurance. Such observation is concededly an opinion, but when it is impracticable for the jury to examine a large number of records and thereby form their own opinion of the validity of the facts disclosed by them a layman who has examined such records may present his opinion of the facts contained therein to the jury. See Southern States LifeInsurance Co. v. Allan, 38 Ala. App. 467, 87 So.2d 439 (1956); C. Gamble, McElroy's Alabama Evidence § 127.01 (3) (3d ed. 1977). Hence, we find no error in the trial court's decision allowing Mr. Manigold to testify that Sergeant Inglish's medical records were inconsistent with his application for insurance.
Appellant also contends in assignments two and four that the trial court "erred in permitting the Defendant's witness Donald F. Manigold to invade the province of the jury by testifying that he would not have issued the policy under the normal operating procedure, if he were aware of the medical records of Gordon T. Inglish," and in overruling its motions for a directed verdict for judgment notwithstanding the verdict, or for a new trial upon the grounds that United Services "failed to prove it would have declined the application of Gordon T. Inglish had it learned the medical facts it learned subsequent to his death." These assignments of error are not well taken for the simple fact that appellee's vice president of underwriting, Don F. Manigold, twice testified without objection on direct examination that had appellee been aware of certain information respecting the sergeant's medical condition and history as revealed by his Air Force medical records at the time he applied for life insurance with United Services appellee would not have issued a policy of insurance on the life of Gordon T. Inglish. It is well settled that:
 [I]n order for a trial court to be held in error on the admission or exclusion of evidence that a particular ruling of a trial court must be invoked by a proper objection seasonably made; or, in the alternative, that the party complaining must move to exclude the alleged improper testimony and thereby invoke a ruling as to its admissibility.
Neumiller v. Jenkins, 270 Ala. 231, 117 So.2d 402 (1960). Furthermore, a motion for a directed verdict or a judgment notwithstanding the verdict may be properly denied where at least a scintilla of evidence presented in a case is in conflict with other evidence in the case with regard to at least one material issue, see Hanson v. Couch, Ala., 360 So.2d 942 (1978); Wells v.Central Bank of Alabama, Ala.Civ.App., 347 So.2d 114 (1977), and a motion for a new trial may be overruled in the trial court's discretion, which discretion "should not be disturbed on appeal unless some legal right was abused and the record plainly and palpably *Page 965 
shows that the trial court was in error." Trans-South-Rent-A-Car,Inc. v. Wein, Ala., 378 So.2d 725 (1979). In light of these well-established legal principles, we cannot say that there was not even a scintilla of evidence introduced upon the trial of this case that was in conflict with other evidence also produced in this case, or that the record before us plainly and palpably demonstrates that a legal right of appellant was abused by the circuit court's refusal to grant her a new trial.
As previously noted, § 27-14-7 of the 1975 Code of Alabama permits an insurer to avoid liability on a contract of insurance for misrepresentations and incorrect statements made by the insured in his application for insurance if such misrepresentations or statements are (1) fraudulent; (2) material either to the acceptance of the risk or the hazard assumed by the insurer; or (3) such that the insurer would not have issued the contract or provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required by the application for the policy. Hence, appellee could legally refuse to pay any death benefits to appellant if it proved that Gordon T. Inglish made misrepresentations or incorrect statements with regard to his medical condition or history in his application for insurance and
that such misrepresentations or statements fell within any one of the three aforementioned categories. Conversely, appellee could not escape liability on the policy if no misrepresentations or incorrect statements were made in the application. The answers which Gordon Inglish furnished to questions 26-30 of the application could be considered misrepresentations or incorrect statements only if, at the time of providing them, he actually knew or believed that they were false or otherwise inaccurate. Appellee could not legally refuse to pay the face amount of the policy to appellant simply by demonstrating that Gordon Inglish might have constructively known or believed that some or all of his answers to his application were false or incorrect. See OldSouthern Life Insurance Co. v. Woodall, 295 Ala. 235,326 So.2d 726 (1976), appeal after remand, Ala., 348 So.2d 1377 (1977). Appellee asserts that Sergeant Inglish (1) misrepresented the date of his latest physical examination, (2) neglected to state that he had received medication or medical treatment as a result of this examination, (3) failed to list all physicians who had examined or treated him within the past five years, the purposes of such examinations or treatments and the dates on which same were conducted, (4) stated falsely that he never had heart disease nor had been treated for heart disease, and (5) could not possibly have believed that he was in good health when he applied for insurance with appellee. Inasmuch as there is evidence in the record to support appellee's assertion that Sergeant Inglish failed to list on his application for life insurance all physicians who had examined or treated him within the preceding five years, we are of the opinion that appellee is entitled to avoid liability on its policy to appellant under § 27-14-7 of the 1975 Code of Alabama and therefore pretermit discussion of the validity of the remaining four contentions presented by appellee. On his application for insurance Sergeant Inglish made no effort to provide United Services with even a partial list of all physicians who had examined or treated him from 1972 to 1977, explain the purposes of such examinations or treatments, or divulge on what dates they occurred. He simply referred it to his annual Air Force physical examinations. Records of those examinations disclose that Sergeant Inglish, in a medical history report completed by him on May 3, 1977, stated that he had consulted or had been treated by a physician within the past five years for a hiatal hernia. On cross examination by counsel for appellant, appellee's vice president of underwriting, Don Manigold, stated, in substance, without objection that United Services would not have issued a life insurance policy on the life of Sergeant Inglish or would not have issued such policy at the rate that it issued it to decedent had it known that he had consulted or had been treated by a physician within the past five years for such an ailment. By this *Page 966 
testimony, United Services was obviously attempting to establish its statutory right to avoid liability on the policy it issued to the sergeant under § 27-14-7 (3) of the 1975 Alabama Code. Of course, it could only escape liability on the policy through the medium of this Code section by demonstrating that Sergeant Inglish's response to question 28 constituted a knowing misrepresentation by him of his medical history at the time he completed his application for life insurance. He acknowledged that he was suffering from a hiatal hernia in a medical history completed by him as part of a retirement physical on May 3, 1977, over one month before he applied for life insurance with appellee. Hence, at the time he completed the application, he knew that he had been treated for a hiatal hernia within five years preceding the date of the application. But could the jury have reasonably concluded that decedent's response to question 28 of the application, i.e. "Annual A.F. Physical," was tantamount to a misrepresentation of his medical history in that it attempted to conceal a physical ailment of the decedent from the insurer's knowledge so that it would not hesitate to extend life insurance coverage to decedent at a standard premium rate? We think so and for this reason are of the opinion that its verdict cannot be set aside. Appellant argues that appellee could have obtained knowledge of Gordon Inglish's history of hiatal hernia trouble before issuing a policy on his life by examining his Air Force medical records, which it failed to do although decedent had given appellee written authorization to inspect them. Therefore, according to this argument, decedent did not misrepresent his medical history to United Services in answering question 28 of his application for insurance. We do not agree. Appellee's vice president of underwriting testified that United Services only examined an applicant's medical records if his answers to his application revealed problems with his health. If his application disclosed no such problems, a policy of insurance would be issued on his life at a standard premium rate. Because the responses furnished by Sergeant Inglish to questions 26-30 of his application for life insurance with appellee did not indicate to United Services that Inglish had or was experiencing health problems, it had issued a policy on his life without examining his Air Force medical records. Thus, the jury could have concluded that a reasonable insurance company would not have been put on notice that Gordon Inglish's answer to question 28 of his application was false or misleading and that, therefore, appellee was under no obligation to examine decedent's medical records before issuing a policy of insurance on his life. See BankersLife Casualty Co. v. Long, Ala., 345 So.2d 1321 (1977). Having determined that Gordon Inglish misrepresented his medical history to appellee in his application for insurance and that appellee in good faith would have declined to issue an insurance policy on decedent's life or would have insured decedent's life only at a higher premium rate had it known at the time it accepted the application that he was suffering from a hiatal hernia, our only alternative to uphold the jury's verdict in this case.
Appellant's final contention for reversal relates to a statement her counsel made to the jury in closing argument and to which the trial court sustained an objection. In substance the statement to the jury was that if appellee failed to prove that Sergeant Inglish was suffering from anything other than heart disease at the time he applied for insurance, they should return a verdict for appellant. Appellant argues here that appellee could avoid liability under the policy only by showing that Inglish was actually afflicted with heart disease at the time of the application. As noted in our discussion of the other issues raised by this appeal, this was not the theory on which this lawsuit was tried.
The proper theory upon which this case was tried concerned whether Sergeant Inglish made misrepresentations in his application for insurance and whether appellee would have issued the policy of insurance had it known the true facts respecting his medical condition or history at the time it accepted the application. Hence the trial *Page 967 
court did not err in sustaining appellee's objection to the statement made by appellant in closing argument to the jury.
The judgment of the circuit court is affirmed.
AFFIRMED.
WRIGHT, P.J., concurs.
HOLMES, J., concurs in the result.