Eddie Lee SWIFT, Plaintiff,

v.

**NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE,** Defendant.

No. 86–6272–CIV–MARCUS.

United States District Court, S.D. Florida.

March 19, 1987.

Kenneth D. Cooper, Ft. Lauderdale, Fla., for plaintiff.

Joseph Jennings, Kimbrell Hamen, Miami, Fla., for defendant.

## ORDER OF FINAL SUMMARY JUDGMENT

MARCUS, District Judge.

THIS CAUSE has come before the Court upon Defendant's Motion for Summary Judgment, filed with the Court on December 8, 1986. Upon careful consideration of this matter, the Court has determined that Defendant's motion should be GRANTED for the reasons set forth below.

## I. FACTUAL BACKGROUND

This is a claim for life insurance benefits allegedly due and owing to the policy's named beneficiary, Eddie Lee Swift. The amount of damages claimed represents the face amount of the policy: $100,000.00.

Defendant, the North American Company for Life and Health Insurance, has moved for summary judgment on the ground that the proposed insured, Thomas H. Brooks, in his application to North American filed on August 1, 1983, made a

number of unequivocally incorrect statements as to issues highly material to his eligibility for a Graduate Preferred life insurance policy. (*See* Bea Panjan Affidavit, ¶ 7.) Specifically, Mr. Brooks is alleged to have provided incorrect information regarding his smoking habits and his medical history with respect to prior diagnoses of chronic obstructive pulmonary disease and congestive heart failure.

## A. *Failure to Acknowledge Habitual Smoking*

With respect to Mr. Brooks' cigarette smoking, Questions 5(a) and 5(b) of Part I of the application asked:

5(a) Do you now smoke cigarettes?

5(b) Have you smoked one or more cigarettes during the past twelve months?

(Application for Life Insurance, Exhibit "A," Affidavit of Bea Panjan, attached as Exhibit "A" to Memorandum in Support of Defendant's Motion for Summary Judgment.) Mr. Brooks answered "no" to both of these questions.

Contrary to his responses to these questions, Mr. Brooks' medical records include numerous accounts of Mr. Brooks' sustained use of cigarettes; these records, cited at length in the Memorandum in Support of Defendant's Motion for Summary Judgment, indicate that Mr. Brooks was a smoker both before and after the time of his application to North American for life insurance. A Broward General Medical Center Report of Consultation, dated May 20, 1982, noted that Mr. Brooks smoked a pack of cigarettes per day. (Defendant's Memorandum at 3.) The following day, Mr. Brooks' Progress Notes at the Broward General Medical Center described Mr. Brooks as a two-pack-per-day smoker. *Id.* On January 23, 1984, an Admission Record for Mr. Brooks at Doctor's General Hospital listed Mr. Brooks as a smoker of "one pack per day of tobacco for 30 years." *Id.* The following month, a Dr. Saltzmann at Doctor's General Hospital stated that Mr. Brooks "is a smoker of 2 packs a day for about 35 + years." *Id.* It was not until February 27, 1984, that any of Mr. Brooks' medical records indicated that he was no

longer a smoker. On this date, the Broward General Medical Center's Nurses Notes remarked: "Patient states he quit smoking 2 days ago." *Id.*

From these varied medical records, it is apparent that Mr. Brooks was a habitual smoker both prior to and after the date of his application to North American. There is no indication in any of these records that he ceased smoking twelve months or more prior to the application. Moreover, the materiality of Mr. Brooks' smoking habit to his eligibility for the Graduate Preferred insurance policy was attested to by Bea Panjan, Assistant Vice President of North American and a Chief Underwriter of that company:

The Graduate Preferred policy is a plan of insurance issued by North American to preferred non-smoking applicants in return for a low premium. Had Mr. Brooks revealed his cigarette smoking, North American would not have issued the Graduate Preferred policy to him.

(Bea Panjan Affidavit, ¶ 7.)

## B. *Failure to Disclose Chronic Pulmonary Disease*

In his application for Graduate Preferred life insurance, Mr. Brooks was also asked whether he had ever had "[t]uberculosis, asthma, hemorrhage, disease of lungs or respiratory system." Mr. Brooks answered "No" to this question. (Application at 3.)

Medical records of Broward General Hospital point to the inaccuracy of this assertion. From May 11 through May 23, 1978, Mr. Brooks was reportedly hospitalized with a diagnosis, *inter alia*, of chronic obstructive pulmonary disease. (Defendant's Memorandum at 3, *citing* medical records of Broward General Hospital.) The existence of this disease was attested to by Dr. T. Rivas–Alexander, who reportedly stated in deposition that Mr. Brooks' chest x-ray during this admission revealed fibrosis, or scarring of the lungs, and that Mr. Brooks had been diagnosed as having "chronic obstructive pulmonary disease manifested by an acute bronchitis." (*Id.* at 4, *citing* Deposition of T. Rivas–Alexander,

M.D., November 14, 1986, at 8–11.) As with Mr. Brooks' longstanding smoking habit, revelation to North American of Mr. Brooks' history of lung disease would have rendered him ineligible for Graduate Preferred life insurance. (Bea Panjan Affidavit, ¶ 9.)

### C. *Failure to Reveal Heart Disease*

On question 6(b) of Part II of his Application for Life Insurance, Mr. Brooks was asked whether he had ever had "high blood pressure, chest pain, heart murmur, heart attack, or disease of heart or circulatory system." (Application at 3.) Here again, Mr. Brooks' negative response to this question was notably contradicted by his reported personal medical history. Mr. Brooks' admission to the Broward General Medical Center in May 1978 has already been mentioned with reference to his history of pulmonary disease; during this same hospitalization, Mr. Brooks was diagnosed as having congestive heart failure and arteriosclerotic heart disease. (Defendant's Memorandum at 6.) In Progress Notes taken down at the Broward General Medical Center four years later—still prior to the filing of Mr. Brooks' life insurance application—Mr. Brooks was reported to have had a history of "CHF [Congestive Heart Failure] 3 yrs. ago." (*Id., quoting* Broward Medical Center Progress Notes, 5/21/82.) He is also reported to have told a consultant at Broward General on the same visit that he had been "[a]dmitted at Plantation about 2 years ago for congestive heart failure." (*Id., quoting* Broward General Medical Center Report of Consultation, 5/82.)

The materiality of Mr. Brooks' nondisclosure of his apparent history of heart disease is asserted in the Bea Panjan Affidavit. The absence of a personal or family history of cardiovascular impairment is a "specific requirement for the Graduate Preferred plan of insurance," according to Panjan. (Panjan Affidavit, ¶ 8.)

Mr. Brooks was diagnosed as having lung cancer in early 1984, and died on July 31, 1985, within the two-year contestable period for insurance claims. (Pretrial Stipulation at 3.)

### II. PLAINTIFF'S COUNTER–ASSERTIONS

In his Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiff attempts to counter Defendant's claims that Mr. Brooks materially misrepresented his medical history and smoking habits. As to Mr. Brooks' cigarette smoking, Plaintiff maintains that, in approximately June 1982, after Mr. Brooks' hospitalization for what he allegedly thought was the flu, Mr. Brooks stopped smoking until he found out that he had lung cancer, in early 1984. (Affidavit of Eddie Lee Swift, December 15, 1986.) If one were to credit Mr. Swift's affidavit, this would mean that Mr. Brooks had, indeed, not smoked during the twelve-month period before filing for the North American life insurance policy. However, Mr. Swift's conclusory assertion conflicts with Mr. Brooks' own statement made approximately six months *after* the filing of his life insurance application, that he had quit smoking "two days ago." (Broward General Medical Center's Nurses Notes, February 27, 1984.) Moreover, we have already noted that in January and February of 1984, Mr. Brooks still apparently described himself to medical personnel as a smoker. (Defendant's Memorandum at 3.) Defendant has pointed out, and we agree, that "[t]he fact that Mr. Swift may not have observed Mr. Brooks smoking cigarettes during this ... period of time does not rebut the admission by Mr. Brooks in his medical record that he had done so and does not raise a genuine issue of material fact." (Defendant's Reply to Plaintiff's Memorandum in Opposition, at 3.)

While there is no genuine uncertainty as to Mr. Brooks' failure to divulge his smoking habit to North American, some question does arise as to whether North American, following its own established procedures, should have investigated the ambiguous reference in Mr. Brooks' application to a week-long illness or hospitalization in 1982. Question 7(d) of Part II of the application asks whether the applicant has "ever

been advised to have a surgical operation, consulted a physician or been hospitalized during the past five years." Mr. Brooks' application contained, in relevant part, the following response to this question:

| Illness | No. of Attacks | Date | Severity and Duration | Attending Physician's Name & Address |
|---|---|---|---|---|
| Flue [sic] | 1 | 1982 | 1 week | Dr. Lopez 4104 N.W. 4 St. Ft. Laud., Fla. |

Mr. Glenn Wheelock, the insurance agent who signed Mr. Brooks' application recalled —at least vaguely—that his notation on the application indicated that Mr. Brooks had been in the hospital for a week in 1982. (Deposition of Glenn Wheelock, December 2, 1986, at 32–33.)

North American's Assistant Vice President, Bea Panjan, has stated: "If Mr. Brooks had admitted in his application . . . or if he had admitted that he had been admitted to Broward General Hospital . . . North American's underwriting procedures would have caused an "Attending Physician's Statement" to be obtained . . . . ." (Panjan Affidavit, ¶ 11.) Yet it is not clear from the record evidence, nor does Plaintiff assert, that Dr. Lopez was Mr. Brooks' attending physician during his hospitalization. Therefore, it has not been even arguably established that North American would have learned of Mr. Brooks' chronic obstructive pulmonary disease or his history of congestive heart failure by contacting Dr. Lopez. Moreover, as the application failed to reveal that Mr. Brooks' hospitalization related to heart or lung disease, the insurance company had no reason to suspect that Mr. Brooks had been stricken with anything more serious than the ailment stated in the application—the flu.

In sum, even viewing the evidence in a light most favorable to the Plaintiff, the record evidence clearly shows that Mr. Brooks' application materially misrepresented both Mr. Brooks' longstanding smoking habit and his history of heart and lung disease.

### III. APPLICABLE LEGAL STANDARDS

Fla.Stat. § 627.409(1) establishes the following criteria for an insured's entitlement to recovery under an insurance policy when the application for that policy has been shown to contain factual inaccuracies or omissions:

*627.409. Representations in applications; warranties*

(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

(a) they are fraudulent;

(b) They are material either to the acceptance of risk or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

 The Supreme Court of Florida, in applying this statute, has unequivocally affirmed the plain meaning of the statute's bar on recovery "where either an insurer would have altered the policy's terms had it known the true facts or the misstatement materially affects risk." *Continental Assurance Co. v. Carroll*, 485 So.2d 406, 409 (Fla.1986). *See also Shelby Life Insurance Co. v. Paolasini*, 489 So.2d 89 (Fla. 3d

DCA 1986). This bar on recovery applies even if the misrepresentation or omission was unintentional. *Id.* In reaching this holding, the Florida Supreme Court explicitly reaffirmed an earlier decision which attached the same meaning to Fla.Stat. § 627.01081, the identically worded predecessor to Fla.Stat. § 627.409(1). *Id., citing Life Insurance Co. of Virginia v. Shifflet,* 201 So.2d 715 (Fla.1967).

■ There is no factual dispute as to North American's claim that it would not have issued a Graduate Preferred life insurance policy to Mr. Brooks had it known of his history of heart and lung disorders or his ongoing habit of cigarette smoking. The above-referenced declarations to this effect by North American's Assistant Vice President, Bea Panjan, have nowhere been refuted by Plaintiff. Moreover, the medical records referred to by North American leave no doubt but that Mr. Brooks did, in fact, have a history of heart and lung disease, by the time of his application to North American, and the same records also establish that Mr. Brooks had a longstanding history of cigarette smoking. None of the evidence presented by Plaintiff casts any doubt as to the reliability or veracity of these medical reports. Indeed, Plaintiff's only challenge as to the materiality of this unrefuted evidence pertains to Mr. Brooks' alleged abandonment of cigarette smoking more than twelve months prior to the date of the application. To support this very tenuous claim, Plaintiff has submitted an Affidavit by Eddie Lee Swift, in which it is alleged that Mr. Brooks stopped smoking cigarettes in approximately June 1982, after being hospitalized "for what Mr. Brooks thought was the flu." Swift Affidavit, ¶¶ 2, 3. Mr. Swift further maintains in his Affidavit that Mr. Brooks did not resume cigarette smoking until he found out he had lung cancer, in early 1984. *Id.,* ¶ 2.

Given the evidence in the Broward General Medical Center's records—undisputedly based upon Mr. Brooks' own declarations—that Mr. Brooks did not quit smoking until February 25, 1984, we do not believe that Mr. Swift's statement to the contrary

holds sufficient probative value to allow a jury reasonably to find that Mr. Brooks had not smoked "one or more" cigarettes during the twelve months preceding his application to North American. (*See* Application, Part I, Question 5(b).)

Even if we were to find that Mr. Brooks arguably did not smoke during the twelve months prior to the application, his history of heart and lung disease is conclusive, unequivocal and highly material to his eligibility for the Graduate Preferred policy. While even unintentional misrepresentations or omissions of material fact can bar recovery on an insurance policy, *Continental Assurance Co. v. Carroll,* 485 So.2d at 409, we note in passing that the Broward General Medical Center reports (May 1982), *supra,* leave no doubt but that Mr. Brooks was aware, at the very least, that he had experienced congestive heart failure in 1978. On these grounds alone we find that Mr. Brooks' misrepresentations and omissions on the application as to these illnesses render the policy unenforceable under Fla.Stat. 627.409(1).

■ As mentioned earlier, Question 7(d) in Part II of the application allowed for some ambiguity as to whether Mr. Brooks was hospitalized for the flu or merely consulted a physician regarding this stated illness in 1982. Nevertheless, Plaintiff has failed to establish that, even if North American had contacted Dr. Lopez, the physician listed in Mr. Brooks' response to this question, any information material to Mr. Brooks' eligibility for the Graduate Preferred policy would have been revealed. As Defendant points out:

> [T]he Plaintiff does not contend that Dr. Lopez's records, if they had been sought, would have disclosed the conditions. Indeed, Mr. Swift testified at his deposition that Mr. Brooks' identification of his physician was a "mistake" by Mr. Brooks, that it should have been Dr. Barrerros.

(North American's Reply at 10, *citing* Deposition of Eddie Lee Swift, at 43.) While an insurer must conduct "reasonable" further inquiries into a prospective insured's health following completion of an application for life insurance, the insurer is enti-

tled to rely on the truthfulness of an applicant's responses to questions on the application in determining whether further inquiries are required. *Shelby Life Insurance Co. v. Paolasini*, 489 So.2d 89 (Fla. 3d DCA 986). In *Shelby*, an applicant who had been experiencing chest pains saw two physicians for this problem and was told he might be suffering from heart disease. Nevertheless, in responding to a question asking for "full details" as to prior hospitalizations or physical examinations, the applicant stated only that he had had a physical check-up because he "had flu." *Id.* at 91. The Court, in viewing this evidence, held that the insurer was entitled to rely on the truthfulness of the "flu" response: "[T]he beneficiaries may not be heard to say that the carrier should have undertaken to determine whether there was some other unrevealed malady." *Id.* Similarly, in the case before this Court, North American was entitled to rely on the truthfulness of Brooks' statement that he had been treated for the flu, especially in light of the fact that Brooks did not reveal elsewhere in the application that he had a history of heart disease, lung disease, or any other potentially life-threatening ailment.

■ One additional issue addressed by the Parties is Mr. Brooks' alleged illiteracy and its possible relevance to Mr. Swift's entitlement to recovery under the disputed life insurance policy. First, it is noteworthy that Plaintiff has not alleged that the completed application contained inaccuracies or omissions which Plaintiff would have corrected if the application had been read to him after the agent had filled it out. Second, and more importantly, the courts of this state have clearly held that a person who signs a contract is presumed to know its contents.

The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illiterate persons on the ground that if such persons are unable to read, they are negligent if they fail to have the contract read to them. If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and

explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents.

*Sutton v. Crane*, 101 So.2d 823, 825 (Fla. 1st DCA 1958), *quoting* 12 Am.Jur., Contracts, Section 137. *See also Allied Van Lines, Inc. v. Bratton*, 351 So.2d 344, 347 (Fla.1977); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton*, 467 So.2d 311, 312 (Fla. 5th DCA 985).

Upon a careful consideration of the record evidence, we find that there is no genuine dispute as to the fact that health-related information highly material to Mr. Brooks' eligibility for North American's Graduate Preferred life insurance policy was omitted from his application. We further find that Mr. Brooks' alleged illiteracy does not exempt Mr. Brooks from the provisions of Fla.Stat. 627.409(1), barring recovery when misrepresentations or omissions from an insurance application are found to be material to the insurer's acceptance of risk *or* when the insurer in good faith would not have issued the policy if the true facts had been divulged. As Mr. Brooks' omissions and inaccuracies clearly fall within both of these categories rendering an insurance policy unenforceable, his beneficiary is not entitled to recover from North American. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment be and the same is hereby GRANTED.