**Luisa M. FERNANDEZ,
Plaintiff–Appellant,**

v.

**BANKERS NATIONAL LIFE
INSURANCE COMPANY,
Defendant–Appellee.**

No. 89–5485.

United States Court of Appeals,
Eleventh Circuit.

July 19, 1990.

As Corrected Sept. 25, 1990.

---

James D. Camp, III, Terrence P. O'Connor, Ft. Lauderdale, Fla., for plaintiff-appellant.

Donna S. Waters, Miami, Fla., for defendant-appellee.

Before FAY and KRAVITCH, Circuit Judges, and KAUFMAN *, Senior District Judge.

FAY, Circuit Judge:

This case concerns a beneficiary's claim to the proceeds of a life insurance policy, when the insured decedent died of a terminal illness unknown at the time of insurance application. Finding that the insured decedent's omission of previous medical history constituted a material misrepresentation, the district court granted summary judgment for defendant-appellee Bankers National Life Insurance Company (Bankers) prior to denying as moot plaintiff-appellant Luisa M. Fernandez's motion to compel discovery of allegedly pertinent documents. Plaintiff-appellant appeals the district court's granting summary judgment for Bankers as well as granting summary judgment before ruling on the motion to compel discovery. Because we have determined that the district court should have ruled on the motion to compel discovery before ruling on the summary judgment motion and that genuine issues of material fact exist, we reverse and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The insured decedent, Daniel C. Fernandez, was employed by Charles Weiss, M.D. & Associates, P.A. in Miami Beach, Florida. Dr. Weiss, chairman of orthopedics and rehabilitation at Mount Sinai Hospital, provided a non-contributory pension and life insurance plan for his employees. Upon

---

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

becoming eligible for participation in the plan, Daniel Fernandez, a single male, obtained a $250,000.00 life insurance policy from Bankers. He designated his sister, plaintiff-appellant Luisa M. Fernandez, as his beneficiary.

Daniel Fernandez applied for a life insurance policy with Bankers on September 19, 1985. In response to application questions regarding his health, Fernandez responded that he had not been treated for any illnesses, diseases or injuries during the past ten years and that, within the past five years, he had submitted to annual physical examinations, the results of which were normal. The pension plan and office administrator, who saw Daniel Fernandez at least biweekly, testified that he had "no reason to believe" that Fernandez was telling "anything other than the truth" on his application for life insurance.[1] After reviewing Fernandez's application, Bankers issued the life insurance policy effective December 24, 1985. On January 5, 1986, Fernandez submitted an amendment to the information that he had supplied Bankers and listed two elective surgeries.

Daniel Fernandez died on September 19, 1986, of respiratory distress, seizure disorder, and toxoplasmosis of the brain. The parties do not dispute that these complications resulted from Acquired Immune Deficiency Syndrome (AIDS). Under the life insurance plan with Bankers, the insured's benefit is one hundred percent nonforfeitable if termination of employment is the result of death.[2]

Following the claim on the policy on behalf of the beneficiary by Dr. Weiss as plan trustee, Bankers extensively examined the medical history of Daniel Fernandez, since his death was within the two-year contestable period from the date of policy issuance. In denying the claim, Bankers' policy administrator detailed Daniel Fernandez's reasons for seeing various doctors from October, 1975 to August, 1985.[3] There is no mention of AIDS in this compiled medical history. The last doctor who saw Daniel Fernandez before he applied for the life insurance policy with Bankers treated him on August 12, 1985, for herpes zoster, or shingles, and noted that Fernandez was "[d]oing fine."[4] Bankers explained that knowledge of Fernandez's discovered medical history would have caused them to request additional information, including a blood test. Finding "material misrepresentations of medical history," Bankers claimed that they were prevented from requesting medical testing under routine underwriting procedures.[5]

This action, originally filed by plaintiff-appellant in state court, was removed by Bankers to federal court based on diversity jurisdiction.[6] Bankers moved for summary judgment and filed the affidavits of Charles J. Kindermann, Bankers' manager and director of underwriting when the Fernandez claim was denied, and Jan Perrine, Bankers' claims supervisor. Kindermann's affidavit states that Fernandez's medical records revealed that he "had been treated in the past for herpes, had numerous blood tests and was last seen by a doctor in August, 1985, for herpes approximately one month prior to his application."[7] Kin-

---

**1.** Deposition of Henry Gherman at 35. R2–41.

**2.** Under the Weiss life insurance plan with Bankers, a participant's vested interest is defined as follows:

> VESTING SCHEDULE. A Participant's Accrued Benefit derived from Employer contributions shall be one hundred percent (100%) Nonforfeitable upon and after his attaining Normal Retirement Age (if employed by the Employer on or after that date), or if his employment terminates as a result of death or disability.
> R2–40–5.04.

**3.** Letter, dated September 15, 1987, to Dr. Charles Weiss, Trustee, from Terri L. Talbert,

Bankers Assistant Vice President, Policy Administration. R2–43–Ex.E.

**4.** *Id.* at 3.

**5.** *Id.* at 4.

**6.** The original complaint included defendants Charles Weiss, M.D. & Associates, P.A., Tina Ellen Weiss and Charles Weiss, individually, as trustees of the CW PA Pension Plan. With plaintiff's consent, these defendants subsequently were dismissed with prejudice.

**7.** Affidavit of Charles J. Kindermann at 2. R1–39.

dermann claims that the omission of this information "materially affected the acceptance of the risk" by Bankers and that disclosure would have caused Bankers to require additional information, based upon which Bankers would have either declined to issue the policy or would have issued the policy under different terms.[8] Perrine's affidavit states that the claim "was specifically denied and the policy premium returned to the trustee since the condition which ultimately caused DANIEL FERNANDEZ' demise existed prior to the application date, was known to DANIEL FERNANDEZ, but was not revealed on the life insurance application notwithstanding the fact that said information was requested."[9]

The district court denied Bankers' summary judgment motion and extended discovery. The case subsequently was reassigned to another district judge. During extended discovery, the depositions of Kindermann and Perrine were taken.

Kindermann testified that he made the decision to deny the Fernandez claim and that he consulted Perrine and underwriting manuals in making his decision.[10] He also reviewed Daniel Fernandez's medical history, the same medical history reviewed by Perrine, and found no specific mention of AIDS.[11] Kindermann attested that the primary reason for denying the claim was herpes zoster and that AIDS was not a factor.[12] He stated that no questions were asked concerning AIDS on the Bankers' application in September, 1985.[13] Subsequently, questions concerning AIDS or AIDS-related conditions have been added to the Bankers' life insurance application. Kindermann conceded that at least one other AIDS case had been reviewed during the two-year contestable period resulting in the claim being honored.[14] He acknowledged that neither prior episodes of gonorrhea, from which Fernandez apparently had recovered, nor venereal diseases generally were involved in his evaluation of the claim.[15] He stated that if "there was no medical history and the Herpes Zoster had not been there and he died of AIDS and the information on the application would have been honest, the claim would have been paid."[16]

Interestingly, Perrine began work at Bankers in September, 1987, following the decision by Kindermann to deny the Fernandez claim.[17] Perrine verified that her affidavit reference to an existing condition at the time of Daniel Fernandez's application and the cause of his death was AIDS.[18] She claimed that the presence of AIDS was evident in Daniel Fernandez' medical records obtained by Bankers.[19] She conceded, however, that she had no specific recollection of seeing a notation regarding AIDS in those medical records or of tests for AIDS being administered prior to Fernandez's insurance application.[20] While the medical records do not state that AIDS was discussed with Fernandez, Perrine contends that the record of treatment shows that he had AIDS.[21] Furthermore, Perrine's review of Daniel Fernandez's medical records did not reveal a diagnosis of AIDS or that his having AIDS was known to him prior to his insurance application.[22] Perrine acknowledged that her position did not include the determination of whether an omission from medical records was material.[23] At oral argument, appellee Bankers conceded that there was no record evidence

8. *Id.* at 3.

9. Affidavit of Jan Perrine at 2. R1–39.

10. Deposition of Charles J. Kindermann at 9–10, 49. R3–79.

11. *Id.* at 35–36.

12. *Id.* at 27, 34–35.

13. *Id.* at 43.

14. *Id.* at 38.

15. *Id.* at 28.

16. *Id.* at 47.

17. Deposition of Jan W. Perrine at 5, 27. R3–84.

18. *Id.* at 12–13.

19. *Id.* at 14.

20. *Id.* at 15, 17.

21. *Id.* at 19, 22.

22. *Id.* at 22–23.

23. *Id.* at 29.

to show that Daniel Fernandez had or knew that he had AIDS when he applied for the subject life insurance policy.

Bankers filed a renewed motion for summary judgment, which contains basically the same supporting documents as its first summary judgment motion with the notable exceptions that Perrine's affidavit was omitted, a different Kindermann affidavit was filed, and the Kindermann and Perrine depositions were included. In his second affidavit, Kindermann notes that the medical records of Daniel Fernandez showed that he had been treated for herpes and gonorrhea, had numerous blood tests and was last seen by a doctor for herpes in August, 1985.[24] While Kindermann again states that Fernandez's medical history omissions "materially affected the acceptance of the risk" by Bankers, he supplements that disclosure of the diagnosis of herpes zoster on August 12, 1985, would have caused Bankers to request "an attending physician[']s statement and a blood profile test including tests for the HTLV-III Antibody."[25] Consequently, Kindermann avers that the policy either would not have been issued or would have been issued under different terms and conditions. The underwriting manual page and exhibit to the Kindermann affidavit lists herpes zoster with ailments such as athlete's foot, influenza and warts as "infections in which recovery is usually without significant residual disability."[26]

While Bankers' summary judgment motion was pending before the district court, plaintiff-appellant moved to compel the production of requested documents. The documents requested were all approved and disapproved Bankers' life insurance applications from August, 1984, through December, 1985. Bankers responded that the production of these documents was irrelevant, burdensome and overbroad. The district court denied without prejudice plain-

tiff-appellant's motion to compel as impermissibly broad, but stated that "nothing in this order shall preclude plaintiff from serving upon defendants a less expansive request."[27]

Plaintiff-appellant subsequently requested the same documents, narrowing the time period from July to September, 1985. When Bankers objected to the modified request to produce on essentially the same grounds, plaintiff-appellant filed another motion to compel production. Plaintiff-appellant explained that Bankers had contended as a primary defense that the alleged omissions from Daniel Fernandez's insurance application prevented evaluation of his health risk in granting the insurance. Without review of other applications, plaintiff-appellant claimed that she would be unfairly prejudiced concerning the issue of materiality of representations or omissions in the insurance application for the purpose of evaluating the health risk of the insured.

Before ruling on plaintiff-appellant's second motion to compel, the district court granted Banker's renewed motion for summary judgment on April 27, 1989. The district court concluded that Bankers' summary judgment motion "turns on whether Mr. Fernandez's misrepresentations can, as a matter of law, be deemed 'material.' "[28] The district court specifically found that Daniel Fernandez's medical history revealed that he was being treated for herpes, most recently one month prior to filing his application with Bankers, and that he had undergone numerous blood tests.[29] The district court acknowledged the parties' differences regarding the grounds for refusal of the policy claim based on Fernandez's alleged failure to fully disclose his medical history.[30] Unpersuaded by plaintiff's arguments that Bankers' employees Kindermann and Perrine cited different reasons for denial of the policy, the district court determined that,

24. Affidavit of Charles J. Kindermann at 3. R3–80.

25. *Id.*

26. *Id.* at Ex.D.

27. R4–94.

28. R4–115–4.

29. *Id.* at 3.

30. *Id.* at 2, 6.

"even if these disputes are resolved in favor of the plaintiff," Fernandez's conduct was material within the meaning of applicable Florida law.[31] The district court's order, denying as moot plaintiff-appellant's second motion to compel production of documents because of granting Bankers' summary judgment motion, was entered on May 2, 1989.

## II. ANALYSIS

On appeal from entry of final summary judgment, plaintiff-appellant raises two issues that warrant full discussion. First, plaintiff-appellant contends that the district court erred in granting Bankers' renewed summary judgment motion, when Bankers' first summary judgment motion had been denied previously. Second, plaintiff-appellant argues that the district court erred in granting Bankers' renewed summary judgment motion without permitting discovery of pertinent documents from Bankers.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The Supreme Court has held:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The Court has instructed that "the substantive law will identify which facts are material" and that the trial judge "must view the evidence presented through the prism of the substantive evidentiary burden" in ruling on a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 254, 106 S.Ct. 2505, 2510, 2513, 91 L.Ed.2d 202 (1986). Aligning a summary judgment decision with directed verdict analysis, the Court has defined a factual dispute as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248, 106 S.Ct. at 2510. When a motion for summary judgment has been made properly, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e)).

■ An appellate court's review of a grant of summary judgment is plenary, and we must apply the same legal standards used by the district court. *Livernois v. Medical Disposables, Inc.*, 837 F.2d 1018, 1021–22 (11th Cir.1988); *Carlin Communication, Inc. v. Southern Bell*, 802 F.2d 1352, 1356 (11th Cir.1986). We must view the evidence and all factual inferences most favorably toward the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir.1988) (per curiam). "A trial court must not decide any factual issues it finds in the records; if factual issues are present, the court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983).

■ State law governs a diversity action concerning the interpretation of an insurance contract; we, therefore, must apply Florida law in order to determine whether there were material misrepresentations in

**31.** *Id.* at 6.

Daniel Fernandez's application for life insurance. *United of Omaha Life Ins. Co. v. Sun Life Ins. Co.*, 894 F.2d 1555, 1563 (11th Cir.1990); *see Ruhlin v. New York Life Ins. Co.*, 304 U.S. 202, 205, 58 S.Ct. 860, 861, 82 L.Ed. 1290 (1938). The relevant Florida statute provides as follows regarding misrepresentations in insurance applications:

(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

(a) They are fraudulent;

(b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Fla.Stat. § 627.409(1) (1985). "This provision allows an insurance company to avoid its obligations under a policy whenever the holder of the policy makes material misrepresentations in acquiring the policy." *Home Guar. Ins. Corp. v. Numerica Fin. Servs., Inc.*, 835 F.2d 1354, 1356 (11th Cir. 1988). In interpreting section 627.409, Florida Statutes, the Florida Supreme Court has reaffirmed its decision in *Life Ins. Co. v. Shifflet*, 201 So.2d 715 (Fla. 1967), to hold that the plain meaning of the statute bars recovery "where either an insurer would have altered the policy's terms had it known the true facts or the misstatement materially affects risk, a nonintentional misstatement in an application will prevent recovery under an insurance poli-

cy." *Continental Assurance Co. v. Carroll*, 485 So.2d 406, 409 (Fla.1986). The misrepresentation need not be made fraudulently or knowingly; to void the policy, the misstatement must affect the insurer's acceptance of the risk or be a fact, which if known, would have caused the insurer not to issue the policy. *Old Southern Life Ins. Co. v. Kirby*, 522 So.2d 424, 426 (Fla. Dist.Ct.App.1988).

Our inquiry into materiality requires examination of misrepresentations which have been held to be material. *Carroll* involved a life insurance policy on an infant, who died of congenital heart disease nine days following issuance of the policy. While the parents indicated that their child had been seen by a doctor on the insurance application, they answered that the baby was found to be normal, although the doctor had disclosed that the infant had a heart murmur and needed both an EKG and x-rays. The Florida Supreme Court concluded that the trial judge should have directed the verdict in favor of the insurer.

Following *Carroll*, Florida appellate courts and federal district courts applying Florida law have found that misrepresentations on an insurance application are material for preventing recovery when the misstatement obviously affects the risk of insurance. *See, e.g., Swift v. North American Co. for Life & Health Ins.*, 677 F.Supp. 1145 (S.D.Fla.1987), *aff'd*, 838 F.2d 1220 (11th Cir.1988) (In response to questions as to whether he smoked or had smoked one or more cigarettes in the past twelve months, the insured responded negatively. His medical records, however, revealed that he was a habitual smoker before and after his insurance application. The particular policy was intended for nonsmokers. The insured responded negatively to the application questions asking if he had ever had respiratory or heart diseases. His medical records showed that he had been diagnosed as having chronic obstructive pulmonary disease manifested by an acute bronchitis as well as congestive heart failure and arteriosclerotic heart disease. His history of lung and heart diseases would have made him ineligible for the

particular policy. Following issuance of the policy, the insured was diagnosed as having lung cancer, and he died within the two-year contestable period.); *ITT Life Ins. Corp. v. Hernandez*, 651 F.Supp. 1408 (S.D.Fla.1987) (The court found that admittedly incorrect answers in a life insurance application for the insured decedent were material to issuance of the policy.); *de Guerrero v. John Hancock Mut. Life Ins. Co.*, 522 So.2d 1032 (Fla.Dist.Ct.App.1988) (per curiam) (Insured responded on insurance application that, within the past five years, he had seen a physician once for an examination to obtain insurance. The uncontradicted facts revealed that he had several consultations with his doctor, who had diagnosed him as overweight and suffering from a goiter three weeks prior to his insurance application. Similarly, the insured had responded that he was not an alcoholic or user of drugs, when he had been an active alcoholic since the age of sixteen, so diagnosed by the physician from whom he sought treatment for his alcoholism and to whom he admitted that he used marijuana. The insured died within the two-year policy contestability period.); *Old Southern Life Ins. Co. v. Kirby*, 522 So.2d 424 (Fla.Dist.Ct.App.1988) (In his application for medical expenses and hospitalization, insured left blank the response to the insurance application question requiring him to list all insurance then in effect. He had forty-eight similar policies at the time. Had this fact been known, the insurance company would not have issued the policy to this over-insured individual.); *Shelby Life Ins. Co. v. Paolasini*, 489 So.2d 89 (Fla.Dist.Ct.App.) (Within six months before he applied for reinstatement of his lapsed $100,000.00 life insurance policy, the prospective insured suffered repeated chest pains; had seen two doctors, one being a heart specialist; had been informed that he may be suffering from heart disease; and was taking regular medication, including nitroglycerine tablets, to alleviate the problem. Nevertheless, he responded on his insurance application that he had seen one doctor for flu during the relevant time period. Approximately two months after the policy was reinstated, the

insured died from a massive heart attack.), *review denied*, 501 So.2d 1283 (Fla.1986). When facts necessary for the insurer to determine the risk pertinent to a particular applicant are blatantly and deliberately inaccurate, by omission or incorrect, insufficient inclusion, "[t]here can be little doubt that these false statements are material." *Hernandez*, 651 F.Supp. at 1409; *see Kirby*, 522 So.2d at 426 ("A 'blank' is an 'omission' in our view, particularly where allegedly material information was omitted."). "While an insurer must conduct 'reasonable' further inquiries into a prospective insured's health following completion of an application for life insurance, the insurer is entitled to rely on the truthfulness of an applicant's responses to questions on the application in determining whether further inquiries are required." *Swift*, 677 F.Supp. at 1149–50; *see Paolasini*, 489 So.2d at 91 ("Since, as *Carroll* holds, Shelby the insurer was entitled to rely on the truthfulness of the 'flu' response, the beneficiaries may not be heard to say that the carrier should have undertaken to determine whether there was some other unrevealed malady.").

In the context of life insurance policies since *Carroll*, the cited Florida and federal cases demonstrate that, when the facts necessary to determine materiality are not in dispute, the trial judge appropriately may decide the question of materiality as a matter of law through a summary judgment motion or a directed verdict. *See Swift*, 677 F.Supp. at 1150 (In granting summary judgment for the insurer, the district court stated that "[u]pon a careful consideration of the record evidence, we find that there is no genuine dispute as to the fact that health-related information highly material to Mr. Brooks' eligibility for North American's Graduate Preferred life insurance policy was omitted from his application."); *de Guerrero*, 522 So.2d at 1033 ("Where the evidence is clear and uncontradicted the materiality of the misrepresentation shall be decided as a question of law."); *Paolasini*, 489 So.2d at 90 (Reversing the jury verdict for the beneficiaries, the Florida appellate court instructed that the insurer's motions for directed verdict should have been granted. "Since it was undisputed

below, and is indeed obvious in any event, that the omitted information as to Paolasini's health directly affected the nature of the risk and Shelby's willingness to accept it, *Carroll* and *Shifflet* compel reversal.").

In contrast, under Rule 56(c), when the facts necessary to determine materiality are in dispute, the trial judge shall not decide the case as the trier of fact and must submit the case to a jury. The District of Columbia district court, interpreting section 627.409, Florida Statutes, in view of *Carroll*, has found summary judgment inappropriate when questions of fact exist as to information sought by the insurer. *Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co.*, 674 F.Supp. 354 (D.D.C.1987). *Independent Petrochemical* involved sprayings by plaintiff Independent Petrochemical Corporation of petroleum products, allegedly contaminated with the hazardous waste, dioxin. The insured plaintiffs sought indemnification from their liability insurers for sixty dioxin-related actions filed against insureds. The court found that disputed facts as to whether the primary general liability insurer sought claims for 1975 through 1980 calendar years or policy years precluded summary judgment: "It is up to the finder of fact to determine what 'years' INA [primary general liability insurer] sought information on, as well as what the standard insurance industry practice is with respect to the assignment of claims to policy years different from the calendar years in which those claims are filed." *Id.* at 358. The court also concluded that *Carroll* did not alter the holding by a Florida district court that common law, not section 627.409, applies to nondisclosure of information not solicited by the insurer.[32] *Id.* When ques-

tions regarding materiality exist, the court addressed the inappropriateness of summary judgment determination as follows:

> [I]t should be noted that the question of the materiality of IPC's alleged nondisclosure is an issue to be decided by a finder of fact, not by the court on a motion for summary judgment. INA's retrospective assertion that it would have acted differently had it known of the dioxin-related claims is insufficient to sustain INA's burden on a motion for summary judgment. Indeed, to read Fla. Stat. § 627.409(1) as broadly as INA urges this court to do would give insurers the power to play 'Monday morning quarterback,' potentially voiding all policies that prove to have been bad gambles for them, by uncovering some fact—not solicited at the time of the contract's formation—that might have subsequently burgeoned into a claim upon the insurer. The Florida disclosure statute is not intended for such use; its protections are more limited.

*Id.* at 358–59.

■ In this case, the facts necessary to determine materiality clearly are in dispute. Bankers' employees testimony regarding the decision to deny the Fernandez claim are not in agreement as to the reason for that decision. Perrine claims that nondisclosure of Fernandez's pre-existing AIDS condition when he applied for life insurance was the cause for denial. She, however, conceded that Fernandez's medical records do not indicate or support the fact that he knew that he had AIDS when he applied for life insurance. Not only was Perrine's affidavit notably absent from Bankers' second motion for summary judgment, but also she testified that she was not employed by Bankers when the decision

---

**32.** The court quoted the following holdings from *Roess v. St. Paul Fire & Marine Ins. Co.*, 383 F.Supp. 1231, 1236, 1237 (M.D.Fla.1974):

> [T]he [Florida disclosure] statute simply does not apply to concealment or other species of fraud not related to questions asked or representations made either on an application form or during the course of other special negotiations preceding issuance of the policy.
>    . . . .
> The modern [common law] rule seems to be that the insurer has a duty to make inquiry

concerning matters deemed by it to be material to the risk, and the insured is entitled to a presumption that information not requested is deemed immaterial. Thus, where no inquiry is made about matters alleged to have been concealed, the insurer may avoid the policy only by proving that the concealment was in fact material and, further, that the withholding of such information was intentional and fraudulent.

*Independent Petrochemical*, 674 F.Supp. at 358.

to deny coverage was made. Coupled with the admission at oral argument by Bankers' counsel that there was no evidence in the record that Daniel Fernandez knew that he had AIDS when he applied for the subject life insurance policy, a credibility problem exists as to Perrine's testimony.

Alternatively, after reviewing the same medical records, Kindermann, who actually made the decision to deny the claim, testified that the primary reason for denial was Fernandez's failure to disclose that he had herpes zoster shortly before his application. Yet, the underwriting manual page, attached to Kindermann's second affidavit in support of Bankers' renewed motion for summary judgment, lists herpes zoster with innocuous diseases and ailments that would not preclude insurance coverage. Assuming that Fernandez's failing to disclose his having herpes zoster is the reason that the claim was denied, the question arises as to whether this condition is material to denying the claim by Bankers' own standards. Furthermore, Kindermann's second affidavit appears to be a retrospective attempt to state that the disclosure of herpes zoster would have caused Bankers to request a blood profile that would have revealed AIDS. Fernandez's previous blood tests showed no sign of AIDS and it is at least a question of fact as to whether Fernandez's having herpes zoster, which was successfully treated and is a minor ailment according to the underwriting manual, would have caused Bankers to require extensive blood testing. Kindermann testified that the only other AIDS claim that he had handled within the two-year contestable period was honored. Furthermore, he stated that questions regarding AIDS were not present in Bankers' life insurance application in September, 1985, and that the application has been changed to incorporate questions concerning AIDS or AIDS-related conditions.

Bankers has made acceptance of coverage with the knowledge of herpes zoster a factual issue to be determined by the trier of fact. We, however, view the essential issue in this case as being whether Daniel Fernandez knew that he had AIDS, the cause of his death, when he applied for life insurance with Bankers. Not only has Bankers acknowledged that it has no evidence that Fernandez had such knowledge, but also we see no established connection between herpes zoster, the alleged reason for denial, and AIDS.

We find this case analogous to another district court case in this circuit wherein the insured died of an AIDS-related disease and his estate was awarded his life insurance policy in the amount of $100,000.00. *Kentucky Cent. Life Ins. Co. v. Webster*, 651 F.Supp. 935 (N.D.Ala.1986). In *Webster*, the life insurance applicant had responded negatively to application questions asking if he had ever had chronic internal disorders, such as indigestion; diseases, such as cancer or syphilis; a tumor, abscess, cyst, or growth of any kind; any medical tests within the last five years; and any health examinations in the past three years with disclosure of the examining doctor, symptoms, the diagnosis and treatment. When he completed his application, the decedent had been treated for various kinds of growths, had experienced numerous medical tests within the preceding five years, and had undergone seven health examinations within the previous three years. In the three years preceding his application, the decedent had received successful treatment with medication or outpatient surgery for growths and dermatological infections on various parts of his body. Tests for possible syphilitic exposure in July, 1984, were negative.

The insurer did not investigate the decedent's medical history prior to issuing its policy to him. The district court found that, if the insured decedent had answered the application questions affirmatively and completely, then the insurer nonetheless would have issued the policy at the standard rate without further investigation. Additionally, the court found that, if the insurer had undertaken an independent investigation upon receipt of the decedent's application, then it would have issued the policy because the decedent's medical records did not warrant denial of the policy.

On September 2, 1984, the decedent was examined for lesions on his body by his dermatologist, who requested a biopsy. Three days later, the decedent returned for the biopsy, and that same day the insurer issued its policy. The court found that the decedent's health was the same on September 28, 1984, when the policy was delivered, as when he completed his application. On October 4, 1984, the insurer was informed that the biopsy revealed the presence of Kaposi's sarcoma, a disease associated with AIDS. The insured died on August 2, 1985.

The district court found that, on the date of application and delivery of the policy, the decedent did not know that he had a life-threatening condition. Furthermore, the court found that "[t]he incorrect statements made by decedent in his application were not material to acceptance of the risk assumed" by the insurer. *Id.* at 937. While *Webster* is an Alabama case, we find the facts sufficiently similar to warrant consideration by the district court in this case. Specifically, we conclude, as did the court in *Independent Petrochemical* and as we have enumerated herein, that factual issues prevent summary judgment as to the materiality of Daniel Fernandez's misrepresentation regarding herpes zoster in his insurance application and whether Bankers would have issued the policy if it had been apprised of this condition. Pursuant to Rule 56(c), the district court inappropriately acted as the trier of fact and erred in granting summary judgment to Bankers.

Plaintiff-appellant has complained that the district court erred in granting Bankers' motion for summary judgment, when another district judge had denied the prior summary judgment motion. Two motions for summary judgment may be ruled upon in the same case, particularly when discovery has been extended for good reason, as in this case, and the district judge allows a second summary judgment motion. *See Allstate Fin. Corp. v. Zimmerman,* 296 F.2d 797, 799 (5th Cir.1961) (Two motions for summary judgment, attaching different affidavits, were ruled upon by two judges, one a visiting judge. The former Fifth

Circuit stated: "While we certainly do not approve in general the piecemeal consideration of successive motions for summary judgment, since defendants might well normally be held to the requirement that they present their strongest case for summary judgment when the matter is first raised, we do not believe the rules prohibit the consideration by a trial court of a second motion of this nature."); *Kirby v. P.R. Mallory & Co.,* 489 F.2d 904, 913 (7th Cir.1973) ("If good reason is shown why a prior denial of a motion for summary judgment is no longer applicable or should be departed from, the trial court may, in the exercise of sound discretionary power, consider a renewed motion for summary judgment, particularly when the renewed motion is based on an expanded record."), *cert. denied,* 417 U.S. 911, 94 S.Ct. 2610, 41 L.Ed.2d 215 (1974); *Kern–Tulare Water Dist. v. City of Bakersfield,* 634 F.Supp. 656, 665 (E.D.Cal.1986) (The court listed three grounds justifying reconsideration of a summary judgment motion: "(1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or prevent manifest injustice."), *aff'd in part, rev'd in part on other grounds,* 828 F.2d 514 (9th Cir.1987), *cert. denied,* 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988). Furthermore, denial of summary judgment is an interlocutory ruling which does not have *res judicata* effect. *United States v. Florian,* 312 U.S. 656, 61 S.Ct. 713, 85 L.Ed. 1105 (1941) (per curiam); *United States v. Horton,* 622 F.2d 144, 148 (5th Cir.1980) (per curiam); *Travelers Indem. Co. v. Erickson's, Inc.,* 396 F.2d 134, 136 (5th Cir.1968); *see Williams v. Bishop,* 732 F.2d 885, 886 (11th Cir.1984) (per curiam). Plaintiff-appellant also has faulted Bankers for removing Perrine's affidavit and substituting another Kindermann affidavit more favorable to its position in the second motion for summary judgment. Plaintiff-appellant has not been prejudiced, however, because we review the entire record in ruling on a district court's grant of summary judgment. *See, e.g., Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1562–63

(11th Cir.1987) ("[T]he issue on appeal from the grant of summary judgment for defendant is whether the record as a whole contains sufficient evidence."); *Ransom v. S & S Food Center, Inc.*, 700 F.2d 670, 675 (11th Cir.1983) ("The only question for us here is whether on the motion for summary judgment, there was a substantial issue of fact before the trial court on the entire record, including pleadings, affidavits, and depositions, that would prevent the court from granting summary judgment."); *Murphy v. Georgia–Pacific Corp.*, 628 F.2d 862, 866 (5th Cir.1980) ("In considering a motion for summary judgment, a court must examine the entire record before it, and draw every reasonable inference in favor of the party opposing the motion." (citation omitted)).

■ The other issue of substance on appeal is whether the district court erred in granting Bankers' renewed motion for summary judgment without permitting plaintiff-appellant to obtain relevant discovery. Following the district court's instruction when it denied plaintiff-appellant's initial motion to compel production of Bankers' approved and disapproved life insurance applications, plaintiff-appellant narrowed the time period for the production of these documents to July through September, 1985, when Daniel Fernandez applied for Bankers' life insurance. This request resulted in a second motion to compel. Having granted Bankers' summary judgment motion, the district court denied plaintiff-appellant's second motion to compel approximately a week later as moot. The district court, therefore, ruled on Bankers' summary judgment motion without according plaintiff-appellant the opportunity to examine and compare Bankers' review procedure for other life insurance applications submitted during the pertinent time that Fernandez applied. If the district court had considered the requested documents irrelevant, then it would have so stated in its order denying the initial motion to compel the same documents for a more extended period of time. Instead, the district court gave plaintiff-appellant leave to file a less expansive request for production.

This court previously has reviewed the Supreme Court's direction for ruling on summary judgment motions found in *Celotex*, *Anderson* and *Matsushita* and concluded that the common denominator of those cases is "that summary judgment may only be decided upon an adequate record." *WSB–TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir.1988). "Generally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests." *Snook v. Trust Co.*, 859 F.2d 865, 870 (11th Cir.1988); *Cowan v. J.C. Penney Co.*, 790 F.2d 1529, 1532 (11th Cir.1986) (per curiam). The party opposing summary judgment is responsible for informing the court of any outstanding discovery. *Cowan*, 790 F.2d at 1530. In this circuit, however, the opposing party need not file an affidavit pursuant to Federal Rule of Civil Procedure 56(f) in order to invoke the protection of that rule because " 'the written representation by [the opposing party's] lawyer, an officer of the court, is in the spirit of Rule 56(f) under the circumstances.' " *Snook*, 859 F.2d at 871 (quoting *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1146 (5th Cir.) (en banc), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973)). This circuit recognizes that the interests of justice sometimes require postponement in ruling on a summary judgment motion, although the technical requirements of Rule 56(f) have not been met. *Snook*, 859 F.2d at 871.

In this case, plaintiff-appellant informed the district court of the Bankers' life insurance applications that had not been produced in response to its second motion to compel. The relevance of these documents is evident because they might have shown that Bankers had issued policies and honored claims under similar circumstances. *See Wilmington Trust Co. v. Manufactures Life Ins. Co.*, 749 F.2d 694, 697 (11th Cir.1985). This is particularly true when Kindermann testified that herpes zoster was the primary cause of denying the Fernandez claim and that he knew of at least one instance where Bankers had honored the life insurance policy of

an AIDS decedent, who died within the two-year contestable period. The insurance applications requested by plaintiff-appellant appear to be relevant, discoverable and necessary to provide an adequate record in this case. *See Snook*, 859 F.2d at 871. The district court's failure to rule on the motion to compel deprived plaintiff-appellant of the right to use the discovery process in order to obtain the facts necessary to oppose Bankers' renewed summary judgment motion and constitutes reversible error. *Id.*

Accordingly, we REVERSE the district court's granting of summary judgment to Bankers because of the failure of the district court to allow complete discovery and the existence of genuine issues of material fact, and we REMAND this case for further proceedings consistent with this opinion.