Richard JORDAN, Plaintiff,

v.

LAKELAND REGIONAL MEDICAL CENTER, INC., et al., Defendants.

No. 99–CV–2691–T–30MSS.

United States District Court, M.D. Florida.

Aug. 15, 2001.

Richard Jordan, Houston, TX, pro se.

Robert Eugene Puterbaugh, Peterson & myers, P.A., Lakeland, FL, Hank B. Campbell, Jack Pettus James, III, Gray, Harris, Robinson, Lane, Trohn, Lakeland, FL, Stephen R. Senn, Peterson & Myers, P.A., Lakeland, FL, for Lakeland Regional Medical Center, Inc.

Hank B. Campbell, Jack Pettus James, III, Gray, Harris, Robinson, Lane, Trohn, Lakeland, FL, for City of Lakeland.

William Penn Dawson, II, Macfarlane, Ferguson & McMullen, Tampa, FL, for Daniel Sprehe, MD, P.A.

James F. Page, Jr., G. Robertson Dilg, Gray, Harris & Robinson, P.A., Orlando, FL, for Joseph L. Riley Anesthesia Associates, P.A.

Jack E. Holt, III, Grower, Ketcham, More, Rutherford, Noecher, Bronson & Eide, P.A., Orlando, FL, for Advertist Health System/Sunbelt Inc.

Ralph C. Losey, Alan Harrison Brents, Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A., Orlando, FL, for Connecticut General Life Ins. Co., Cigna Life Ins. Co.

### ORDER GRANTING DEFENDANT CONNECTICUT GENERAL LIFE INSURANCE COMPANY'S MOTION FOR FINAL SUMMARY JUDGMENT

MOODY, District Judge.

This cause came on for consideration on Defendant Connecticut General Life Insurance Company's Motion for Final Sum-

mary Judgment and supporting Memorandum (Dkt.# 152) and Plaintiff's response in opposition thereto (Dkts.# 156, # 157). Plaintiff also filed a Motion to Take Judicial Notice of Case Law Cites from Opposition Response to Connecticut General Life Insurance Company's Motion for Final Judgment with Alternative (Dkt.# 159). The Court also considered Plaintiff's Fourth Notice of Scrivener's Error in Plaintiff's Opposing Motion to CGLIC's Motion for Final Summary Judgment (Dkt.# 160). Upon review of the Motion, response, record evidence cited therein (Dkts.# 153, # 158), and the case file in this matter, the Court finds that final summary judgment in favor of Connecticut General Life Insurance Company ("CGLIC") is warranted.

## I. FACTUAL BACKGROUND

Plaintiff's claims against CGLIC are for breach of a disability insurance benefits policy issued by CGLIC to the Southern Medical Association. Under this policy, in the event of disability, CGLIC would pay Plaintiff short term disability benefits of $2000 per month for a period of up to twelve months and long term disability of $10,000 per month for up to twenty-four months, with a thirty day waiting period. Under the short term disability policy, a sickness or injury is considered disabling if the insured is "completely prevented from performing the duties of his occupation or in the case of a specialist, each and every duty of his specialty." The long term disability provides for disability benefits if "because of an injury or sickness, [the insured] is unable to perform all the essential duties of [his] occupation." At all times thereunder, the individual must be under the care of a physician.

Plaintiff received short term disability benefits from September 16, 1998, to December 7, 1998, and long term disability benefits from October 16, 1998, to December 7, 1998. These payments were made in connection with Plaintiff's involuntary hospitalization for psychiatric treatment and evaluation at Lakeland Regional Medical Center ("LRMC") under Florida's Baker Act in September, 1998.[1] After his involuntary hospitalization, Plaintiff was initially suspended, and thereafter terminated, from the medical staff at LRMC where he was employed as an anesthesiologist. Plaintiff claims that CGLIC breached its disability benefits when it stopped making disability payments after December 7, 1998, and claims he is entitled to disability benefits from CGLIC for the time period of December 8, 1998, to October 15, 2000.

After December 8, 1998, Plaintiff was examined by six psychiatric physicians. Their opinions, as well as the opinion of CGLIC's expert who reviewed the relevant medical records in this case, form the basis of CGLIC's contention that Plaintiff was not disabled and thus not entitled to disability benefits under the short and long term disability policies with CGLIC. The following physicians formed opinions on Plaintiff's disability status:

1) Dr. Daniel Sprehe evaluated him in October, 1998, after his release from the involuntary hospitalization and concluded that Plaintiff's mental condition prevented Plaintiff from practicing anesthesiology.

2) Dr. Arie den Breeijen, Plaintiff's treating psychiatrist, sent a letter dated December 8, 1998 in which he concluded that no psychiatric or mental condition prevented him from

---

**1.** Plaintiff's claims against the other Defendants in this case also arose out of the Baker Act incident and have been previously dis- missed with prejudice by the Court after Plaintiff filed his Fourth Amended Complaint. (*See* Dkts. 78, 132, 151).

practicing anesthesiology. ("I would feel comfortable with having him give me anesthesia for surgery. He has no functional limitations other than those imposed by his [anesthesiology] Department. His potential to return to work is good and he should be put to work with appropriate supervision as soon as possible."). He also indicated that he had no authority to put Plaintiff to work and acknowledged the concerns that LRMC had with allowing him to return to their medical staff.

3) Dr. Michael Solloway, a psychiatrist, examined him on December 15, 1998, and concluded by letter dated April 21, 1999, that, "I can offer no psychiatric contraindication to [Plaintiff's] continuing work in his profession as an anesthesiologist." [2]

4) Dr. Richard Greer conducted a psychiatric examination of Plaintiff on December 21, 1998, and concurred with previous psychiatric opinions. ("Psychological testing does not demonstrate a reason why Dr. Jordan should be incapable to practicing anesthesiology, from a cognitive standpoint" and recommends that Plaintiff continue to be treated by a psychiatrist and "be supervised if his clinical skills are in question.")

5) Dr. Hansueli Steiner, a psychiatrist retained by Florida's Agency for Health Care Administration, rendered an opinion on Plaintiff's fitness to the Florida Board of Medicine on January 28, 1999. In his opinion, he found that Plaintiff had recovered from a "psychotic episode in September" and "could safely be entrusted—and always could be—with the care of patients." Dr. Steiner also recom-

mends that Plaintiff should have an "ongoing relationship with a psychiatrist whom he trusts."

6) Dr. Michael J. Herkov, a clinical psychologist, evaluated Plaintiff through the Physician's Recovery Network on February 5, 1999. He concluded that Plaintiff's "mental status examination did not indicate any cognitive impairments that would impair Dr. Jordan's ability to practice medicine in a safe and competent manner."

7) CGLIC's expert witness in this case, Dr. John Blankemeier, a psychiatrist practicing in Winter Haven, Florida, concluded, after reviewing the relevant medical documents, that Plaintiff was fully capable of working as an anesthesiologist from December 8, 1998, forward.

CGLIC offers these opinions and reports in support of its motion as evidence that there is no material issue of fact that Plaintiff had the capacity to return to work as an anesthesiologist on or after December 8, 1998, and was therefore not disabled and was no longer entitled to payments under his disability policies with CGLIC. As a matter of law, Defendant argues that it is entitled to final summary judgment on Plaintiff's claim that the disability contracts with CGLIC were breached.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires summary judgment if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant can meet this initial burden by presenting evidence

---

2. It appears from the Plaintiff's deposition that this opinion may not have been part of CGLIC's decision to discontinue Plaintiff's

disability benefits because it was not part of CGLIC's claims file at the time the final decision was made. (Dkt. 153, Exh. 4 at 5).

showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of the case on which he or she bears the ultimate burden of proof. *Id.* The evidence must be viewed in the light most favorable to the non-moving party. *See Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir.1988).

Once the moving party has met his or her burden, Rule 56 requires the nonmoving party to go beyond the pleadings and by affidavit(s), or by the "depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in the nonmovant's favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers National Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir.1990).

### III. LEGAL ANALYSIS

■ The question central to Plaintiff's claim against CGLIC is whether his mental condition disabled him from performing all the duties, each and every one, of his medical specialty of anesthesiology. CGLIC relies on the numerous expert psychiatric opinions to find that Plaintiff had the capacity to work as an anesthesiologist and was therefore not disabled as defined by COLIC's disability policies. In addition, Plaintiff received no psychiatric care after January, 1999, so he was not under the care of a physician as required by the disability policies. Moreover, Plaintiff obtained employment as an anesthesiologist (part-time work as *locum tenens* at Cleveland Regional Medical Center in Cleveland, Texas, and Putnam County Medical Center in Palatka, Florida) as of February, 2000. CGLIC has also consistently maintained that Plaintiff has put forth inconsistent positions regarding his disability in this case by arguing that he is not disabled for purposes of his (now dismissed) claims against LRMC but that he is disabled for purposes of seeking disability benefits from CGLIC. (*See* Dkt. 85, CGLIC's Motion to Dismiss).

*Plaintiff's Arguments*

Plaintiff's main argument in opposition to CGLIC's Motion for Summary Judgment is that he could not perform the duties of an anesthesiologist because those duties do not include that he be supervised. Plaintiff points to the December 8th letter from Dr. den Breeijen, his attending physician at that time, in which he states that Plaintiff "should be put to work" as an anesthesiologist "with appropriate supervision as soon as possible." Plaintiff interprets this remark to exclude him from returning to his anesthesiology practice "since anesthesiologists work entirely without supervision." (*See* Dkt. # 156, n. 4).

■ Plaintiff alleges that CGLIC is "quibbling" over the meaning of the words defining disability and attempting to construe it "with self serving inferences in a self serving light to avoid payment of the benefits due." (*See* Dkt. # 156, ¶ 37). Plaintiff correctly points out that the language in an insurance policy should be given the same meaning that a "reasonable layperson" or person of "ordinary intelligence" would reasonably give it and that

contracts of insurance are generally to be construed against the drafter, or insurer, and in favor of the insured. *York Ins. Co. v. Williams Seafood of Albany, Inc.*, 223 F.3d 1253, 1255 (11th Cir.2000). Even interpreting the insurance policy in such a manner, CGLIC has presented sufficient undisputed evidence from at least six psychiatric physicians as to Plaintiff's disability status during the months when Plaintiff was initially paid disability benefits and after the disability benefits stopped. Plaintiff's sole argument, that an anesthesiologist's "essential duty" is to work independent of supervision fails to preclude summary judgment in CGLIC's favor on a record that establishes that the Plaintiff was not disabled after December 7, 1998.

Plaintiff seems to imply that once Plaintiff was found to have a disability, that is, a mental condition that required involuntary hospitalization, that CGLIC must continue to pay all benefits due under the contracts. To the contrary, CGLIC is contractually entitled to continue disability benefits only while Plaintiff is found to be disabled as defined under the policies. Plaintiff likens his case to that of a pilot with "less than perfect vision, who may be capable of managing any number of actual tasks that a professional pilot routinely performs. Regardless of the pilot's ability to perform, actual mundane tasks of a professional pilot, the FAA automatically denies that pilot's certification as an airline transport pilot; i.e., they view the pilot as legally blind, disabled, or unqualifiable. Whether the candidate could fly like a student pilot under the supervision of another qualified pilot is irrelevant." The Court fails to find this analogy applicable or persuasive. (*See* Dkt. # 156 at n. 15).

Plaintiff further argues that a "liberal interpretation" of Dr. den Breeijen's letter provides a disputed issue of fact precluding summary judgment because the physician's "credibility, state of mind, and belief

in his professional qualifications to practice anesthesiology remain in doubt." Plaintiff supports this theory by stating "[i]f Plaintiff's deposition answers tend to prove, by indirect negative inference, any suggestion of self-doubt in his professional abilities as an anesthesiologist, before December 1998, [Connecticut General] should rephrase their questions in a direct manner in the broader context of time." Plaintiff's subjective beliefs do not present a material issue of fact for trial.

Plaintiff also focuses his opposition on CGLIC's Answer to Plaintiff's complaints which Plaintiff alleges constitute a "reversal" of CGLIC's position from initially denying "all liability" to later "disavowing all subsequent liability on the same claims." (*See* Dkt. # 156, ¶ 3). Plaintiff contends that CGLIC initially "implies" that his hospitalization pursuant to Florida's Baker Act was "appropriately invoked and applied by statute" and later CGLIC "contradicts the propriety of Plaintiff's hospitalization." Plaintiff accuses CGLIC of exhibiting "bad faith by paralleling and adopting the Lakeland stratagem ... then show[ing] callus disregard for Plaintiff's well being, by exacerbating the harm by summarily depriving Plaintiff of the disability benefits." (*See* Dkt. # 156 at ¶ 35). Plaintiff's main argument, when the disjointed narrative in his opposition brief is boiled down, amounts to the fact that CGLIC initially paid the disability benefits and then subsequently, after receiving additional psychiatric opinions that established that Plaintiff was not disabled and could return to work, terminated his disability benefits. Given the support in the record for Plaintiff's lack of a disability by at least six examining psychiatric physicians, both during and after the involuntary hospitalization, summary judgment in favor of CGLIC is warranted. The record at this time supports CGLIC's position that upon a showing (by numerous physi-

cians) that Plaintiff was no longer disabled, his disability benefits were properly terminated.[3]

Plaintiff argues, in the same self-serving way he accuses CGLIC of arguing, that the Court should ignore all medical reports except the initial one finding him disabled and find the other psychiatric opinions immaterial "as to the scope and construction of an anesthesiologist's practice." (*See* Dkt. # 156 at ¶ 41). Plaintiff generalizes that "the vast majority of the medical community, take an unfavorable prejudicial view of a stigma of mental disease with irrational professional adverse consequences. The legal disability status consequently remained unchanged by unfair prejudice of mental illness regardless of ... contrary opinions." *Id.* Plaintiff argues that the subsequent psychiatric opinions are speculative and their probative value is "substantially outweighed by the unfair prejudice these unscientific reports undoubtedly convey; [they] create confusion, waste time because of [their] subjective, unscientific and unreliability under Federal Rule Evidence 403." (*See* Dkt. # 156 at ¶ 42). Plaintiff claims that the subsequent opinion of CGLIC's psychiatric expert, Dr. Blankemeier, is based on "hearsay" and his report was produced "before giving Plaintiff an opportunity to cross examine his findings and qualifications in advance." Despite the fact that discovery in this case has closed and Plaintiff has made no timely motion to extend discovery or compel the deposition, Plaintiff indicates that he plans to depose Dr. Blankemeier and "probably file a request for a *Daubert* hearing or motion *in limine,* depending on the Court's disposition of the [Motion for Summary Judgment]." Even without Dr. Blankemeier's opinion, the Court finds the record sufficient to hold that there is no material issue of fact precluding summary judgment on the issue of whether CGLIC breached its disability contract with Plaintiff. It clearly did not.

Plaintiff also alleges that LRMC prevented Plaintiff from performing all the duties of his occupation by terminating him from its medical staff. Such a limitation on his anesthesiology practice fails to establish that Plaintiff was disabled and could not work given the letter from his attending physician stating otherwise; that he was able to return to work as an anesthesiologist. Plaintiff also seems to argue that when he was instructed to participate in certain treatment prior to being terminated from LRMC's medical staff and failed to do so, CGLIC was at fault and thus his disability benefits should continue. Plaintiff even argues that the fact that LRMC reported Plaintiff's hospitalization to the National Practitioner's Data Bank ("NPDB"), a fact that he disputes was even necessary and which he claims was based on "intentional, false patient-care accusations" by LRMC, somehow precludes summary judgment for CGLIC.[4] Even if these actions were relevant to the claim against CGLIC, the Court finds that the actions of LRMC do not impact CGLIC's liability under its disability bene-

3. Plaintiff testified that he even believed that he was able to perform, and fully capable of performing, anesthesiology at the time that he was disabled and receiving disability benefits, but also during the time for which he is seeking disability benefits—after December 8, 1998. (Dkt. 153, Exh. 4 at 19, 21, 23, 36).

4. Plaintiff testified that he was turned down from two jobs due to the NPDB report by LRMC; however, Plaintiff admits that the reporting does not, in and of itself prevent a hospital from hiring and that his medical license, in both Florida or Texas, and his board certification have never been in jeopardy nor has any type of action such as revocation or suspension ever been initiated. (*See* Dkt. 153, Exh. 4 at 13–14).

fits policy with Plaintiff and therefore fail to preclude summary judgment in CGLIC's favor.

Plaintiff also seems to imply that when CGLIC points to Plaintiff's subsequent employment as an anesthesiologist at other hospitals, they are improperly "absolved" of their "liability and performance under the contracts." By its nature, if Plaintiff is employed as an anesthesiologist at other hospitals, the disability benefits payable under the CGLIC policy are not warranted because he is not disabled from working as defined by the disability policies.

Accordingly, Plaintiff's arguments fail to present any disputed issues of fact as to Plaintiff's disability status and as to whether CGLIC breached its disability benefits policy with Plaintiff when it discontinued benefits in December 1998. CGLIC has provided a record supporting its conduct in terms of discontinuing Plaintiff's disability benefits and established that there is no material issue of fact as to Plaintiff's claim against it. Accordingly, summary judgment in CGLIC's favor is warranted. It is therefore **ORDERED AND ADJUDGED** that Defendant CGLIC's Motion for Final Summary Judgment (Dkt.# 152) is hereby **GRANTED.** The Clerk is directed to enter final summary judgment in favor of Defendant CGLIC, terminate all pending motions, and close this case.