[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 26, 2012
JOHN LEY
CLERK

No. 11-12060
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cv-00187-TCB


KIRBY FRAZIER,

Plaintiff-Appellant,

versus

DOOSAN INFRACORE INTERNATIONAL, INC.,
for self and,
a.k.a. Doosan Infracore International,
d.b.a. Bobcat Company,
a.k.a. Bobcat, Inc.,
a.k.a. Bobcat Corporation,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 26, 2012)

Before EDMONDSON, HULL and FAY, Circuit Judges.

PER CURIAM:

Kirby Frazier appeals the district court's grant of summary judgment in favor of Doosan Infracore International ("Doosan") in Frazier's employment discrimination action under 42 U.S.C. § 1981; Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e-2, 2000e-3; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a); and several Georgia statutes.[1] On appeal, Doosan argues that we should dismiss Frazier's appeal because he did not properly cite to the record or legal authority. Frazier, proceeding *pro se*, argues on appeal that the district court: (1) abused its discretion in denying him relief under Federal Rule of Civil Procedure 56(d), and (2) erroneously granted Doosan's motion for summary judgment on Frazier's claims of discrimination based on race and age, as well as his claim of retaliation. For the reasons set forth below, we decline to dismiss Frazier's appeal, but we affirm the district court's denial of relief under Rule 56 and the grant of summary judgment to Doosan.

I.

In 2005, Frazier, an African-American individual born in 1964, began

---

[1] On appeal, Frazier does not address his state law claims, which the district court dismissed. Accordingly, he has waived review of these claims. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (holding that issues not raised on appeal are waived).

2

working at Doosan's plant in Carrollton, Georgia. The plant fabricated, assembled, welded, painted, and shipped attachments for construction equipment. Frazier began working there as a product cell leader, which was a mid-level supervisory role. Ron Scibetta was hired as the plant superintendent in May 2006, and he became Frazier's direct supervisor. Said Maroun was hired as the plant manager in September 2006. Frazier reported to Scibetta, who reported to Maroun. In the summer of 2007, both Frazier and Sandra Grossett applied for a manufacturing manager position at the plant. During the selection process, Frazier complained to Milicent Mack, a human resources manager, that he seemed to be getting passed over for the promotion. He told Mack that he thought he was being discriminated against, but he did not recall if he specified to Mack that he felt that he was being discriminated against on the basis of his race and age. Mack told Frazier that she would speak with Maroun. Grossett was selected for the position in November 2007. Once Grossett was hired, Frazier began reporting to Grossett, and Grossett reported to Maroun. Grossett informed Frazier in April 2008 that his performance was deficient. Frazier was placed on a performance improvement plan on May 6, 2008, and he was fired on June 16, 2008.

Frazier ultimately filed this lawsuit, alleging the following. First, Doosan discriminated against him on the basis of race when it failed to promote him to

manufacturing manager, in violation of 42 U.S.C. § 1981. Doosan also discriminated against him on the basis of race and age when it assigned him a low performance rating, placed him on a performance improvement plan, and fired him, all in violation of § 1981, Title VII, and the ADEA. Frazier alleged that Doosan retaliated against him by firing him, in violation of § 1981, Title VII, and the ADEA. Doosan also retaliated against him when it assigned him a low performance rating and placed him on a performance improvement plan, both in violation of Title VII and the ADEA. Frazier also asserted that the low performance rating meant that he was denied a pay raise.

While discovery was ongoing, the magistrate judge held two discovery hearings, during which Doosan was ordered to supplement the documents it had produced. The magistrate accepted Doosan's representations that it did not possess some of the documents that Frazier sought, but Doosan was also ordered to continue searching for other documents and to produce affidavits in which employees declared that they were unable to find certain documents. Finally, the magistrate allowed Frazier to reopen the depositions of himself and two other witnesses and to start the deposition of a third witness.

Following discovery, Doosan filed a motion for summary judgment. Doosan argued that Frazier could not establish a *prima facie* case of race or age

4

discrimination or retaliation. Even if he could establish a *prima facie* case, Frazier could not show that Doosan's legitimate, nondiscriminatory reason for taking the various employment actions at issue—namely, Frazier's poor work performance—was a pretext for discrimination. Doosan submitted a number of exhibits with its motion for summary judgment.

Maroun testified in a deposition that Scibetta told Maroun that Frazier was having a number of performance problems, such as keeping the plant floor running. In mid-2007, Maroun determined that the plant was growing and needed two supervisors on the first shift. Frazier was then made responsible for the weld department, and Justin Schultz, a white male under the age of 40, was hired as the other first shift supervisor. Maroun described the weld department as the most important department in the plant and explained that he assigned Frazier to that department because Frazier had expressed a desire to help the plant improve. Frazier's performance did not improve in his new role. He continued to not prepare schedules, communicate information, or ensure that personal protective equipment was available. He also did not ensure that each weld cell had the correct parts at the correct times, identify which parts would need to be replaced first, or form a plan to ensure that all required parts were available.

Maroun further testified that he hired Grossett as the manufacturing

5

manager because she had a strong background, and during her interview, she gave specific examples of past projects she had successfully completed. Maroun did not think that Frazier could handle the responsibilities of scheduling, orchestrating production, and working toward producing and shipping orders within four days. Technology problems kept Grossett from completing Frazier's 2007 performance review, but in late 2007 and early 2008, Maroun and Grossett discussed Frazier's performance as part of their review of his performance. They determined that Frazier's 2007 performance was unsatisfactory. Frazier was ultimately placed on a performance improvement plan, and Maroun decided to fire him because his performance did not improve while on that plan. According to Maroun, Schultz had problems with two or three of his employees, but his problems were not unusual for supervisors generally. Nor were Schultz's problems of the same type or severity as Frazier's performance problems.

Doosan submitted Grossett's affidavit, which included her resume. According to her resume, Grossett had a bachelor's degree in administration and management and had worked in manufacturing management from 1985 until 1990 and from 1992 until 2007. Grossett declared that, on April 4, 2008, she had prepared a list of 6 of Frazier's positive work attributes and 14 areas in which he needed to improve (hereinafter "April 2008 document"). Some of the areas in

6

which Frazier needed improvement were: (1) being on the floor during shift changes; (2) managing his employees and information more efficiently; (3) updating production schedules weekly; (4) knowing what was already produced, what was being produced at any given time, and what would be produced in the future; (5) meeting deadlines for things such as overtime sheets; (6) using material shortage sheets; (7) managing the personal protective equipment of his employees; and (8) being more proactive, rather than reactionary, in solving problems. Grossett also noted, in a series of emails attached to the affidavit, that Frazier's welders had worked on frames that had already been completed, Frazier did not keep the weld area clean, and Frazier did not tell his welders what to build. On June 6, 2008, Grossett recommended to Mack and Maroun that Frazier be terminated.

Frazier testified in a deposition that he had complained to Mack and Maroun that he did not think that the April 2008 document reflected his 2007 performance or that the document was fair. He also told Mack and Maroun that he felt that he was being discriminated against on the basis of his race and age when he received the April 2008 document. Frazier was placed on the performance improvement plan on May 6, 2008. The improvement plan specified that Frazier needed to improve by: (1) issuing timely production schedules to the weld cells,

7

(2) reporting daily production information from the weld cells, and (3) updating and communicating material shortages. According to progress notes that Grossett made on May 13 and 28, 2008, Frazier was not updating material shortage sheets, he had not given a welder an assignment, his welders did not have necessary parts at their stations at the beginning of their shifts, he was not consistently updating production schedules, and he needed to better manage late orders and backlogs. Finally, Frazier testified that Maroun never made any negative comments to Frazier regarding race or age.

Schultz testified that he had seen Maroun use obscenities in production meetings, either toward Frazier or in regard to situations involving Frazier. Schultz described Frazier as "a bit scattered" when it came to preparing for some production meetings. Schultz and Maroun occasionally saw each other outside of work: they played golf together once or twice, and Schultz was invited to Maroun's house once or twice. There were no black individuals with Schultz and Maroun when they played golf, and Schultz could not remember if there had been any black individuals at Maroun's house when he was there. Finally, Schultz testified that he had been told that he needed to develop his management skills and that one of his employees at the Carrollton plant elected to change positions within the plant because he was dissatisfied with Schultz's management. Schultz

received a raise based on his 2007 performance.

In response to the motion for summary judgment, Frazier identified Schultz as his comparator and argued that Doosan unjustifiably gave Schultz, but not Frazier, a raise. Frazier argued that summary judgment was inappropriate, that Schultz should have been placed on an improvement plan instead of Frazier, and that Frazier should have been selected for the manufacturing manager position because he was more qualified for the position than Grossett was. Frazier submitted a number of declarations with his response. In the declarations, a number of Frazier's former coworkers stated that: (1) Schultz had been a poor supervisor, (2) Frazier was a strong supervisor, and (3) Maroun blamed Frazier for Schultz's mistakes. Frazier also submitted a declaration from Scibetta, his former supervisor, who agreed that Frazier was a strong supervisor, but Schultz was not.

Doosan replied that Frazier had not established a *prima facie* case or shown that Doosan's legitimate, nondiscriminatory reasons for taking the employment actions at issue were a pretext for discrimination.

In a report and recommendation, the magistrate explained first that it was unlikely that Frazier had established a *prima facie* case as to his race and age discrimination claims because Schultz was not a sufficiently similar comparator. If he had established a *prima facie* case, Frazier had not shown that Doosan's

9

proffered reason for its actions—that is, his deficient performance—was pretextual. Second, as to Frazier's claim regarding the failure to promote him to manufacturing manager, he had established a *prima facie* case, but he had not rebutted Doosan's reasons for selecting Grossett for the position. The magistrate then considered the retaliation claims. As to the 2007 complaint of discrimination made to Mack, there was no evidence that the decisionmakers, Maroun and Grossett, knew of the complaint. As to the April 2008 complaint of discrimination, Frazier had established a *prima facie* case as to the improvement plan and his termination, but not to the denial of a pay raise. Nonetheless, Frazier was unable to rebut Doosan's proffered reason for its actions: his poor performance. Thus, the magistrate recommended granting the motion for summary judgment.

Frazier objected to the report and recommendation, first requesting relief under Fed.R.Civ.P. 56(d) because Doosan had withheld evidence from him. He admitted that he did not provide an affidavit regarding the discovery disputes. Frazier also objected to the magistrate's recommendation regarding granting summary judgment.

The district court adopted the report and recommendation and granted Doosan's motion for summary judgment. The court found that no action was

10

necessary as to the alleged discovery disputes because Frazier had not submitted an affidavit or declaration as required by Rule 56(d).  The judgment specified that Doosan would recover the costs of the lawsuit.

## II.

*Pro se* briefs are read liberally, but a *pro se* litigant waives issues not raised in his initial brief.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).  An appellant's brief must contain citations to the relevant law and to the record.  Fed.R.App.P. 28(a)(9)(A).  This rule is prudential, not jurisdictional.  *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1286 n.4 (11th Cir. 2003) (considering counseled brief that did not cite to the administrative record).

We decline Doosan's request to dismiss Frazier's appeal under Fed.R.App.P. 28(a)(9)(A).  Frazier, proceeding *pro se*, did cite to a number of cases, and he included some record citations in his brief.  Reading Frazier's brief liberally, he has sufficiently complied with Rule 28(a)(9)(A).  *See Timson*, 518 F.3d at 874.  Doosan is correct, however, that Frazier waived any argument regarding his statement of facts and the taxation of costs because he made only passing references to these issues in his brief.  *See id.*

## III.

We review the denial of a Rule 56(d) motion for abuse of discretion.  *Fla.*

11

*Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1315 (11th Cir. 1990) (interpreting Rule 56(d)'s predecessor).  A court abuses its discretion by making a clear error of judgment or applying an incorrect legal standard.  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011).

Where the nonmoving party to a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" delay consideration of the motion for summary judgment, deny the motion, allow additional time for discovery, or issue another appropriate order.  Fed.R.Civ.P. 56(d).  We have not required a party to file an affidavit to receive protection under this rule because, at times, justice requires postponing a ruling even where "the technical requirements of Rule [56(d)] have not been met."  *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 570 (11th Cir. 1999) (interpreting Rule 56(d)'s predecessor).

The district court did not abuse its discretion in considering Doosan's motion for summary judgment despite the allegedly withheld evidence.  *See Fla. Power & Light Co.*, 893 F.2d at 1315.  Frazier's failure to file an affidavit in support of his allegations, as required by Rule 56(d), is not dispositive of the issue.  *See Fernandez*, 906 F.2d at 570.  Nonetheless, the court did not make a clear error in judgment because justice did not require action by the court in response to

12

Frazier's allegations regarding discovery. *See id.* After holding two discovery hearings, the magistrate determined that Doosan did not possess some of the documents at issue, ordered Doosan to continue looking for other documents, ordered Doosan to produce affidavits regarding the existence of some documents, and allowed the parties to reopen some depositions and begin a new deposition. The magistrate could not order Doosan to produce documents that it did not possess. Moreover, the magistrate took a number of steps to protect Frazier's rights, such as ordering Doosan to continue looking for documents and to produce affidavits about the nonexistence of documents it could not locate. In allowing the parties to reopen depositions, the magistrate ensured that the parties had adequate discovery in terms of witness testimony. Because the magistrate took such steps to ensure that the discovery disputes were handled justly, the district court did not abuse its discretion in declining to take further action in regard to those disputes.

## IV.

We review a district court's grant of summary judgment *de novo*, "applying the same legal standards as the district court." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*). "[S]ummary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact." *Id.* (quotation omitted). "A genuine issue of material fact does not exist

13

unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Id.* (quotation omitted). In making this determination, we "make all reasonable inferences in favor of the" nonmoving party. *Id.* (quotation omitted). "[W]e may affirm the district court on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below." *Rowell v. BellSouth Corp.*, 433 F.3d 794, 797-98 (11th Cir. 2005) (quotation omitted).

An employer may not discriminate against an employee on the basis of race (Title VII and § 1981) or age (ADEA). 29 U.S.C. § 623(a); 42 U.S.C. §§ 1981, 2000e-2(a). A plaintiff bears the burden of proving unlawful employment discrimination. *Hinson v. Clinch Cnty.*, 231 F.3d 821, 827 (11th Cir. 2000). Under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), framework, a plaintiff may rely upon circumstantial evidence to prove his race and age discrimination claims. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174, 1174 n.6 (11th Cir. 2010) (Title VII and § 1981); *Chapman*, 229 F.3d at 1024 (ADEA). *McDonnell Douglas* established a three-step process: first, a plaintiff must "establish a *prima facie* case of discrimination"; second, the defendant "must articulate a legitimate, nondiscriminatory reason for the challenged employment action"; and third, the plaintiff must proffer evidence

14

"sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman*, 229 F.3d at 1024 (quotation omitted).

To establish a *prima facie* case of discrimination, the plaintiff may show: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). "The comparators for the fourth prong must be similarly situated in all relevant aspects." *Brown*, 597 F.3d at 1174 (quotation omitted). "The relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies." *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999). "When an individual proves that he was fired but one outside his class was retained although both violated the same work rule, this raises an inference that the rule was discriminatorily applied." *Id.* (quotation omitted).

To meet the requirements of the pretext step, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that the employer's

15

legitimate, nondiscriminatory reason was "a pretext for discrimination." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (holding that officials' comments that black employees were desirable because the school system's students were predominantly black supported a finding of pretext). In so doing, the plaintiff may not recast the reason or attempt to "substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* Rather, the plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted).

Where the quality of a plaintiff's work is at issue in the pretext analysis, it is irrelevant if the employer's opinion as to the work quality was unfounded. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). The question instead is whether the employer was dissatisfied with the employee for a nondiscriminatory reason (even an incorrect reason) or whether the dissatisfaction is merely a cover for discrimination. *Id.* Where a plaintiff attempts to show

16

pretext by arguing that he was more qualified than another individual, he must show, in light of those superior qualifications, that "no reasonable person" would have selected the other candidate rather than the plaintiff. *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quotation omitted).

Employers are prohibited from retaliating against employees who oppose unlawful race or age discrimination. 29 U.S.C. § 623(d) (age); 42 U.S.C. § 2000e-3 (race). The *McDonnell Douglas* burden shifting framework applies to retaliation claims. *Alvarez*, 610 F.3d at 1268 (Title VII); *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009) (§ 1981); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (ADEA).

The district court did not err in granting Doosan's motion for summary judgment. As to Frazier's discrimination claims regarding his performance rating, performance improvement plan, and termination, he did not establish a *prima facie* case because Schultz was not a sufficiently similar comparator. *See Brown*, 597 F.3d at 1174. It is not Schultz's job title that differentiates him from Frazier. *See Lathem*, 172 F.3d at 793. Rather, Schultz and Frazier are not sufficiently similar because Frazier has not shown that Schultz's alleged misdeeds as a supervisor were comparable to Frazier's performance problems. *See id.* That is, Frazier

17

alleges that Schultz was a poor supervisor who could not control his subordinates or adequately oversee the fabrication department's production. Grossett noted in April 2008 that Frazier had similar management problems, but she also found Frazier's performance deficient because he was not on the floor during shift changes, he did not update production schedules weekly, he was not aware of what had already been and what still needed to be produced, he missed deadlines, he did not use material shortage sheets, he did not manage his employees' personal protective equipment, and he did not keep the weld area clean. Thus, while both Schultz and Frazier needed to improve their general supervisory skills and the organization of their respective departments, Frazier's performance was also deficient in a number of other areas. As there is no evidence that Schultz was deficient in as many areas, or in the same areas, as Frazier was, no inference of discrimination arises from the adverse employment actions that Frazier, but not Schultz, suffered in 2008. *See Lathem*, 172 F.3d at 793.

Even if Frazier had established a *prima facie* case of discrimination on these claims, he would not be entitled to survive summary judgment because he has not shown that Doosan's legitimate, nondiscriminatory reason was pretextual. Frazier attempts to rebut Doosan's proffered reason for its actions—Frazier's poor performance—by showing that Maroun's and Grossett's negative opinions of his

18

work were unfounded. However, whether Frazier was actually a poor employee is irrelevant to the pretext question. *See Alvarez*, 610 F.3d at 1266. The relevant question is whether Maroun's and Grossett's dissatisfaction with Frazier's performance was actually a cover for discrimination. *See id.* The only evidence that might support such a finding is the evidence that Maroun used profane language toward Frazier and, on occasion, socialized with a white employee. However, Frazier did not describe the profane language, and there is no evidence that the language was at all related to Frazier's race or age. *Cf. Vessels*, 408 F.3d at 771. Moreover, the fact that Maroun socialized with Schultz approximately four times does not show that Maroun manufactured complaints about Frazier's work performance to cover up his discriminatory actions. Therefore, even if Frazier established a *prima facie* case on his discrimination claims, he did not rebut Doosan's legitimate, nondiscriminatory reasons, and summary judgment on these claims was appropriate.

Next, on the failure to promote discrimination claim, even if Frazier establishes a *prima facie* case, he cannot rebut Doosan's legitimate, nondiscriminatory reason for hiring Grossett to fill the manufacturing manager position. Maroun testified that he hired Grossett based on her work experience and interview answers in which she gave specific examples of past projects that

were successful. This justification is supported by Grossett's resume, which showed that she had worked in manufacturing management almost continually since 1985. Although Frazier was already familiar with the specific processes of the Carrollton plant, it was not unreasonable for Maroun to select an outside applicant with such extensive experience who interviewed well. *See Springer*, 509 F.3d at 1349. Accordingly, Frazier has not rebutted Doosan's proffered reason for hiring Maroun, and summary judgment on the failure to promote claim was appropriate.

Finally, as to the retaliation claims, Frazier's theory on appeal centers around a plan that Maroun allegedly hatched when Frazier first complained to Mack about discrimination in 2007. Frazier asserts that Maroun waited until Scibetta had been replaced to begin complaining about Frazier and that Maroun prepared the April 2008 document to support his decision to deny Frazier a pay raise. Assuming that Maroun even knew about Frazier's 2007 complaint to Mack, Frazier's theory is nonetheless belied by the record. Grossett stated in her declaration that she, not Maroun, prepared the April 2008 document. Grossett further documented Frazier's performance deficiencies in a series of emails written in April 2008. Furthermore, although Maroun made the ultimate decision to fire Frazier, Grossett also independently recommended Frazier's termination. Thus,

20

the record does not support Frazier's theory that Maroun retaliated against him. Frazier has not shown any error in the district court's grant of summary judgment on the retaliation claims.

For the foregoing reasons, we decline to dismiss Frazier's appeal, but we affirm the district court's denial of relief under Rule 56 and the grant of summary judgment to Doosan.

**AFFIRMED.**